The Steamer St. Lawrence—*Meyer et al., Claimants; Tupper et al., Libellants.*

1. The jurisdiction of the Federal courts in admiralty and maritime cases is given in general terms by the Constitution, and the extent of it is to be ascertained by a reasonable and just construction of the words used when taken in connection with the whole instrument.

2. No State can enlarge it, nor can an act of Congress or rule of court make it broader than the judicial power may determine to be its true limits.

3. Congress may prescribe the forms and mode of proceeding in the tribunals it establishes to carry this power into execution.

4. Brief history of the legislation of Congress upon this subject.

5. Congress has given to this court the authority to alter and change the forms and modes of proceeding, and it was under this authority that the 12th rule of admiralty practice was made in 1844, which permitted a proceeding *in rem* wherever the State law gave a lien.

6. It was by virtue of the same authority that the rule was changed in 1858, and the privilege denied to a suitor of taking out process *in rem*, on the mere ground that State law made his claim a lien.

7. But the abrogation of the rule of 1844 by that of 1858 does not imply that the court had become convinced, in the interval, that it wanted jurisdiction in cases to which the former rule applied. The

abrogation meant merely that various considerations made it advisable not to permit that particular form of process to be used by persons who might claim it on the sole ground that the State law gave them a lien, where none was given by the maritime code.

8  The courts could not enlarge or diminish their own jurisdiction by a rule of practice, but they have power over their own process and mode of procedure, and it was in the exercise of this latter power that the rule of 1844 was both made and repealed.

9. The change in the rule was prospective in its operation, and does not defeat a suit previously commenced.

10. A lien for supplies is not waived by a material man who accepts the notes of the owner for the amount due, if it was understood by the parties that the lien should continue.

Appeal from the Circuit Court of the United States for the southern district of New York.

William H. Meyer and Edwin R. Wilcox filed their libel in the District Court against the steamer St. Lawrence, her engine, tackle, apparel, &c., for supplies to the value of $2,500, payment of which had been demanded and refused. The libellants averred that the St. Lawrence had been in the port of New York ever since the supplies were furnished, and they had a lien on her by the law of the State. (Rev. St., Title viii, Ch. 8.) Lewis H. Meyer and Edward Stucken made claim as owners, and answered to the libel that the supplies were furnished on the credit of John Graham, and not of the vessel; that the libellants settled and accounted for them with Graham, took his notes for the amount agreed on, and discharged the vessel; that the respondents are *bona fide* purchasers of the vessel, in good faith, without notice of the libellants' claim.

The evidence taken in the cause showed that the supplies were furnished, the amount and value being ascertained to the satisfaction of the claimants' proctor. It was proved also that John Graham was the owner of the vessel at the time, and that he gave his notes for the amount of the libellants' claim, but it was expressly stipulated between him and the libellants that their lien against the vessel should not be discharged or released unless the notes were paid. The notes were after-

wards surrendered. The claimants purchased the vessel after all these transactions, and there is no proof that they had any notice of the libellants' claim against her.

The District Court decreed in favor of the libellants; the decree was affirmed by the Circuit Court, and the claimants appealed.

*Mr. Lane*, of New York, for the claimants, argued that this contract was not within the admiralty jurisdiction, and cited *The General Smith*, (4 Wheaton, 438;) *Pratt* vs. *Reed*, (19 How., 359;) *Maguire* vs. *Can*, (21 How., 248;) *The John Jay*, (17 How., 400;) 2 Brown Civ. Law, 116.

The rule of the Supreme Court does not give jurisdiction. The power to make rules is in the act of Congress, 5 Stat. at Large, 518, but does not authorize the opening of the court to a suitor or shutting it on him.

If there was a lien, it was waived by taking notes on time for the amount of the supply. Innocent purchasers for value could not be affected as with a lien upon the vessel while the claim of the libellant was in that condition. *The Bark Shusan*, (2 Story, 468;) *The Brig Chester*, (1 Sumner, 86;) *The Schooner Action*, (Alcott, 288;) *Ramsey* vs. *Allegre*, (12 Wheaton, 613.)

*Mr. Williams*, of New York, for the libellants. This contract is in its nature a maritime contract. 2 Brown, Civil and Maritime Law, 75; Conkling's Admiralty, 52; 1 Kent, 379; 3 Kent, 168; Jacobs and Sea Laws; Life of Sir Leoline Jenkins, vol. I, 16; *The Favorite*, (2 C. Robinson, 226;) *The General Smith*, (4 Wheaton, 438;) *Ramsey* vs. *Allègre*, (12 Wheaton, 611;) *Andrews* vs. *Wall*, (3 How., 568;) *Peyroux* vs. *Howard*, (7 Pet., 324.)

The Federal courts have jurisdiction in all cases of maritime contracts, and will give to the libellants the relief they are entitled to. The local law giving a lien upon the vessel, this court will enforce that lien. Conkling, 57; *New Orleans* vs. *Phœbus*, (11 How., 184;) *Roach* vs. *Chapman*, (22 How., 132;) Benedict's Admiralty, 11; 5 Cranch, 61; 1 Pet., 328; *The Pacific*, (1 Blatchford, 585.)

The rule of court does not affect the right of the libellants. The jurisdiction is not derived from the rule. It might be in conflict with the right to sue in this particular form, if the change had taken place before the suit was commenced. But it was made afterwards, and is prospective.

Mr. Chief Justice TANEY. This is an appeal from the decree of the Circuit Court for the southern district of New York, sitting as a court of admiralty.

The case as presented by the transcript is this: The appellees in the summer and fall of 1855 were requested by John Graham, the owner of the steamer St. Lawrence, who resided in New York, to make sundry repairs to the vessel, and to furnish materials for that purpose. The steamboat was then lying in the harbor of New York, which was her home port. The libel states that at the time these repairs were made, and materials found, the laws of New York gave them a lien for the amount on the vessel; and they pray that the steamer may be condemned and sold to satisfy their claim. The application for process against the vessel was founded upon the 12th rule of admiralty practice, prescribed by this court in 1844, (3 How.,) which authorized this mode of proceeding, where the local law gave a lien upon the vessel for supplies or repairs in a domestic port. This rule was altered at December term, 1858, and process *in rem* denied to the party unless a lien was given by the maritime law. The alteration took effect on the 1st of May, 1859, (21 How.,) and the libel in this case was filed, while the former rule was still in force.

There is no question as to the amount due, the proctor for the claimants having assented to the report of the commissioners. But the claimants allege in their answer, that these materials were furnished and repairs made upon the personal credit of Graham, and that the libellants accounted with him, and took his notes for the amount after the work was done. They allege further, that they afterwards purchased the vessel from Graham in good faith, and without notice of this claim; and insist, that as the lien claimed is not created by the maritime law, but solely by a statute of New York, it cannot be

enforced in a court of admiralty, because a statute of a State cannot enlarge the jurisdiction of a court of the United States.

With reference to the last mentioned objection, it may be proper to notice it, more particularly as it is founded upon a misconception of the object and effect of the rules above mentioned.

The objection is founded upon the assumption, that these rules involve a question as to the extent of the admiralty jurisdiction granted by the Constitution. And as the court could not, consistently with its duty, refuse to exercise a power with which it was clothed by the Constitution and laws, the appellants insist that the alteration made by the rule in 1858 must be regarded as an admission that the court had fallen into error when it adopted the rule of 1844, and had exercised a jurisdiction beyond its legitimate boundary; and if the admiralty court had not the right to enforce a State lien in a case of this kind, the rule then in force could not enlarge its jurisdiction, nor authorize the decree of the Circuit Court which supported and enforced this lien.

The argument would be unanswerable, if the alteration related to jurisdiction; for the court could not, consistently with its duty, refuse to exercise a power which the Constitution and law had clothed it, when its aid was invoked by a party who was entitled to demand it as a matter of right.

But there is a wide difference between the power of the court upon a question of jurisdiction and its authority over its mode of proceeding and process. And the alteration in the rules applies altogether to the character of the process to be used in certain cases, and has no relation to the question of jurisdiction.

Judicial power, in all cases of admiralty and maritime jurisdiction, is delegated by the Constitution to the Federal Government in general terms, and courts of this character had then been established in all commercial and maritime nations, differing, however, materially in different countries in the powers and duties confided to them; the extent of the jurisdiction conferred depending very much upon the character of the government in which they were created; and this circumstance,

with the general terms of the grant, rendered it difficult to define the exact limits of its power in the United States.

This difficulty was increased by the complex character of our Government, where separate and distinct specified powers of sovereignty are exercised by the United States and a State independently of each other within the same territorial limits. And the reports of the decisions of this court will show that the subject has often been before it, and carefully considered, without being able to fix with precision its definite boundaries; but certainly no State law can enlarge it, nor can an act of Congress or rule of court make it broader than the judicial power may determine to be its true limits. And this boundary is to be ascertained by a reasonable and just construction of the words used in the Constitution, taken in connection with the whole instrument, and the purposes for which admiralty and maritime jurisdiction was granted to the Federal Government.

Yet Congress may undoubtedly prescribe the forms and mode of proceeding in the judicial tribunals it establishes to carry this power into execution; and may authorize the court to proceed by an attachment against the property, or by the arrest of the person, as the Legislature shall deem most expedient to promote the purposes of justice.

A brief history of the legislation of Congress upon this subject will explain the grounds upon which the rule of 1844 was adopted, and also the reason that induced the court to change it; and will also show that no question of jurisdiction was supposed to be involved in the adoption of the original rule, nor in the change that was afterwards made.

After the passage of the judiciary act of 1789, Congress, at the same session, passed the act prescribing the process to be used in the different courts it had just established, (1 Stat., 93;) and by that act directed that, in the courts of admiralty and maritime jurisdiction, the forms and modes of proceeding should be according to the course of the civil law.

This act left no discretionary power in the admiralty courts, or in the Supreme Court, in relation to the modes and forms of proceeding. And it is evident, that if the courts of admiralty in this country used the process *in rem*, or process by

attachment of the property, in all cases in which it was authorized in countries governed by the civil law, it would unavoidably in some cases come in collision with the common law courts of the State where the parties resided, and where the property was situated, and where other parties besides the owners or builders, or equippers of the ship, might have an interest in, or a claim upon, the property, which they had a right to assert in the courts of the State.

But this difficulty was soon seen and removed. And by the act of May 8, 1792, (1 Stat., 275,) these forms and modes of proceeding are to be according to the principles, rules, and usages which belong to courts of admiralty, as contradistinguished from courts of common law. And these forms and modes of proceeding are made subject to such alterations and additions' as the respective courts might deem expedient, "or to such regulations as the Supreme Court of· the United States shall think proper from time to time by rule to prescribe to any ·Circuit or District Court concerning the same." And the power here conferred upon this court was afterwards enlarged by the act of August 23, 1842.

It was under the authority of these two acts that the rule of which we are now speaking was made in 1844; and afterwards, by virtue of the same authority, altered by the rule adopted at December term, 1858.

It was manifestly proper, and perhaps necessary, that this power should be confided to the court; for, it being the province of this court to determine what cases came within the admiralty and maritime jurisdiction of the United States, its process and mode of proceeding in such cases should be so framed as to avoid collision with the State authorities, where rights of· property were involved, over which the State had a right to legislate, without trespassing ·upon the authority of the General Government. The power was, therefore, given to the court, not only to make rules upon this subject, but to make them from time to time, so that, if any new difficulty should arise, it might be promptly obviated, and the modes of· proceeding and the process of the admiralty courts so moulded as to accomplish that object.

*The Steamer St. Lawrence.*

The case of *The General Smith* (4 Wheat., 438) was decided upon these principles, and the right to proceed against the property regarded as a mere question of process and not of jurisdiction. And the court held that where, upon the principles of the maritime code, the supplies are presumed to be furnished on the credit of the vessel, or where a lien is given by the local law, the party is entitled to proceed *in rem* in the admiralty court to enforce it; but where the supplies are presumed by the maritime code to be furnished on the personal credit of the owner or master, and the local law gives him no lien, although the contract is maritime, yet he must seek his remedy against the person, and not against the vessel. In either case, the contract is equally within the jurisdiction of a court of admiralty. And it is obvious, from this decision, that the court considered the process *in rem* or priority given for repairs or supplies to a domestic vessel by the courts of admiralty, in those countries where the principles of the civil law have been adopted, as forming no part of the general maritime code, but as local laws, and therefore furnishing no precedent for similar cases where the local law is otherwise; consequently they form no part of the admiralty and maritime jurisdiction conferred on the Government of the United States. This case was decided in 1819, and has always since been followed and regarded as a leading one in the admiralty courts. Its authority was recognised in the cases of *Peyroux* vs. *Howard*, (7 Pet., 324;) and *The New Orleans* vs. *Phœbus*, (11 Pet., 275,) and in others to which it is unnecessary to refer. And while process against the vessel was denied in the case of *The General Smith*, because the law of Maryland gave no lien or priority, it was used and supported in the case of *Peyroux* vs. *Howard*—a similar case—upon the ground, that the party had a lien on the vessel by the law of Louisiana, and as the contract was within its jurisdiction, it ought to give him all the rights he had acquired under it; yet, certainly, the court never supposed that the admiralty jurisdiction was broader in Louisiana than in Maryland.

When this court framed the rules in 1844, it, of course, ad-

hered to the practice adopted in the previous cases, and by the 12th rule, authorized the process *in rem* where the party was entitled to a lien under the local or State law. But in the rules then adopted, this rule as well as the others are explicitly adopted as "a rule of practice," and, consequently, liable to be altered from time to time, whenever it was found to be inconvenient, or likely to embarrass the legitimate business of the court. And there could be no embarrassing difficulties in using the ordinary process *in rem*, of the civil law, if the State law gave the lien in general terms, without specific conditions or limitations inconsistent with the rules and principles which governed implied maritime liens; and whenever this was the case, the process to enforce it promoted the convenience and facilities of trade and navigation by the promptness of its proceedings. It disposed at once of the whole controversy, without subjecting the party to the costs and delay of a proceeding in the chancery or common law courts of the State, to obtain the benefit of his lien, if he failed to obtain satisfaction in his suit against the person in the court of admiralty.

The State lien, however, was enforced, not as a right which the court was bound to carry into execution upon the application of the party, but as a discretionary power, which the court might lawfully exercise for the purposes of justice, where it did not involve controversies beyond the limits of admiralty jurisdiction. In many of the States, however, the laws were found not to harmonize with the principles and rules of the maritime code. Certain conditions and forms of proceeding are usually required to obtain the lien, and it is generally declared forfeited or regarded as waived after the lapse of a certain time, or upon some future contingency. These conditions and limitations differ in different States, and if the process *in rem* is used wherever the local law gives the lien, it will subject the admiralty court to the necessity of examining and expounding the varying lien laws of every State, and of carrying them into execution, and that, too, in controversies where the existence of the lien is denied, and the right depends altogether on a disputed construction of a State statute, or, indeed, in some

cases of conflicting claims under statutes of different States, when the vessel has formerly belonged to the port of another State, and become subject to a lien there by the State law.

Such duties and powers are appropriate to the courts of the State which created the lien, and are entirely alien to the purposes for which the admiralty power was created, and form no part of the code of laws which it was established to administer.

Moreover, cases may, and, indeed, have arisen, where a third party claimed a lien prior and superior to that of the libellant under the provisions of a State statute. And where such a controversy arises in a proceeding *in rem*, the admiralty court clearly has not power to decide it, and adjust the priorities in dispute, and would be compelled to abandon and recall its process whenever the controversy assumed that shape.

The proceeding, therefore, *in rem*, upon the ground that the local law gave the lien, where none was given by the maritime code, was found upon experience to be inapplicable to our mixed form of Government. It was found to be inconvenient in most cases, and absolutely impracticable in others, and the rule which sanctioned it was therefore repealed. And the repealing rule provided, that the new rule should not go into operation until the day named in it, because it would have been unjust to those who had already proceeded under the rule of 1844, or might institute proceedings under it before they were aware of the alteration, to subject them to costs and delay by a sudden and unexpected change of a rule of practice.

The case before us was commenced before the change in the rule; and, as there was an undoubted lien acquired under the State law, we think the court had a right to enforce it upon the principles above stated, since no provision of the New York statute, as far as it affected the case, was inconsistent with a maritime lien; and the execution of the process involved no inquiries beyond the legitimate authority of the court.

The remaining question is, has this lien been forfeited or waived? It does not appear to have been forfeited or waived

under any provision in the New York statute, nor was it waived upon the principles of maritime law by the acceptance of Graham's notes, unless the claimants can show that the libellants agreed to receive them in lieu of and in place of their original claim. The notes, in this instance, have been surrendered, and were filed in the proceedings in the District Court. And the language of the court in the case of *Ramsey* vs. *Allegre*, (12 Wheat., 611,) and of Judge Story in commenting upon that case in 3d How., 573, necessarily imply that if the notes had been surrendered, the party would have a right to stand upon his original contract, and to seek his remedy in the forum to which it originally belonged, as fully as if the notes had never been given.

In this case the proof is positive, by the testimony of a witness who was present at the time the notes were given, that it was understood by the parties that they were not to discharge or affect his lien, and that the vessel was to continue liable for his claim as before. And although the respondents appear to have purchased without notice of this incumbrance, their want of caution in this respect cannot deprive the libellants of a legal right, which they have done nothing to forfeit.

*The decree of the Circuit Court is therefore affirmed, with costs.*