Mr. Justice CLIFFORD
 

 delivered the opinion of the court.
 

 Persons' furnishing materials or supplies for ships or vessels, within the State of Alabama, have a lien by the law of that State on the same for ali debts coutracted'by the master, owner, or consignee thereof for the work done,-and for the materials and supplies furnished, in preference to other-' debts due and owing from the owners of such ships or vessels. By the code of that State jt is also provided, under the title, “proceedings in admiralty,” that whenever any .steamboat or other water-craft shall receive on board, as a - common carrier, any goods or merchandise as freight, to be delivered at any specified place, and shall fail to deliver the same as directed in the bill of lading or other contract of shipment, the owner or consignee of such goods or merchandise shall-have a lien on such boat or other water-craft
 
 *632
 
 for his loss, or damage, to be enforced in the éame manner and subject to the rules and regulations prescribed in relation to similar liens for labor, materials, and supplies furnished to such steamboats or other water-craft, as described in the antecedent provision.
 
 *
 

 Pursuant to thos'e statutory rules and regulations of the State, the libel in this case was filed in the City Court of Mobile, and the libellants alleged that they, on the twenty-third of January, .1866, shipped on board the steamboat Belfast, then lying at Vienna in that State, one hundred bales of cotton, to be transported to Mobile, in the same State, and there to be delivered to certain consignees, they paying freight therefor at the rate of five dollars per bale, the dangers of the river excepted; that on the way down the river, below Vienna, twenty-nine bales of the cotton were lost, not by the dangers of the river, and were never delivered to the consignees, whereby the libellants suffered loss to the amount of five thousand eight hundred dollars. Introductory allegations of the libel, also, are the same as in a libel
 
 in rem
 
 in. the'District Courts of the United States; and in conclusion, the “libellants pray process in admiralty” against the steamer, “ her tackle, apparel, and furnithre,” and that the same may be condemned to satisfy their damages and costs. Process was accordingly issued, commanding the sheriff to seize and take the steamer, &c., into his possession, and to hold the same until released by due course of law. Respondents appeared as claimants, and alleged that they were the owners of the steamer, and they admitted that the cotton was shipped on board at the time and place, and on the terms and for the purpose alleged in the libel; but they excepted to the jurisdiction of the court, and alleged that the steamer, at the time the cotton was shipped, was duly enrolled and licensed under .the laws of the United States; that she was then and there regularly engaged in commerce and navigation between the city of Columbus, in the State of Mississippi, and the city of Mobile,, in
 
 *633
 
 the State of Alabama, and that the cotton described .in the libel was lost in her trip down the river from the former city to. her port of destination. Defence of the re-; -spondents.upon the merits was, that the steamer and cargo were captured by a band of robbers in the trip down the river, within the ebb and flow of the tide, and within the admiralty and maritime jurisdiction of the .United States, and without any negligence' or fault on the part of the offi- ' cers aud crew of the steamer. They also set up the defence, that it was agreed between the-master and the shippers that the vessel should hot be liable for the lo'ss of the cotton, if-it was captured by armed men during the voyage, withou any negligence or fault on the part of the carrier. , Libellants excepted to thát part of the answer denying the jurisdiction of the court, as insufficient and invalid; and they also excepted' to the defence, as pleaded; that the steamer was robbed of the cotton, as no bar to a recovery in the case, and .the court sustained the views of the libellants in both particulars, and the respondents excepted to the respective rulings of the court.
 

 . Two other consignments of cotton were also on board.the steamer at the time the alleged robbery occurred. Ninety bales were shipped by.J. H. Steers & Company, at Columbus; and one hundred bales were shipped by ..John Watson & Company, at the same place. Both shipments were to be transported to the port of Mobile, and there to be delivered to. certain consignees under a similar contract of affreightment as that alleged in the first case, except as to the price to' be paid for the transportation.. Steers & Company lost thirty-four bales of their shipment,, and Watson & Company lost thirty bales, as alleged by the respective parties. .Libels in the same form were also filed by those parties about the sanie time, in the same court, and the owners of the steamer appeared -in each case as cláimanís, and pleaded the same defences-in the three cases. .
 

 Evidence was introduced by the respective libellants, proving that the entire cotton lost, and not delivered, was of the value of four thousand .dollars. They also introduced
 
 *634
 
 the several bills of lading, and the respondents admitted' the shipments as alleged in the respective libels. On -the other hand, the libellants admitted that the steamer was robbed, as alleged in the answer, and .without any neglect or fault of the owners of the steamer, or those in charge of her navigation.
 

 Agreement of the parties, as stated in the bill of exceptions, was that the three cases should be tried together, and they were all submitted at the same time and upon the same issues. Finding of the court was that the -whole loss in the three cases was four thousand dollars, and of that sum the decree of the court allowed one thousand dollars to the libellants in the first case, fourteen hundred dollars to the libellants in the second case, and sixteen hundred dollars to the libellants in the third case, with costs to the prevailing party.
 

 Exceptions were seasonably tendered by the respondents to the rulings and decision of the court, and the exceptions were duly allowed by the court. . Appeals were then táken by the respondents to the Supreme Court of the State, where the objections to the jurisdiction of the court were renewed in the formal assignment of errors. The parties were heard, but the court overruled the objections',to the jurisdiction of the court, and affirmed the respective decrees rendered in the subordinate court. Writs of error were then sued out under the twenty-fifth section of the Judiciary Act, and the respective causes wére removed into this court.
 

 Jurisdiction of this court to re-examine the questions presented in the pleadings may be assumed as existing without discussion, as it is conceded that the questions are the same as were raised and decided in the State courts, and it is not controverted that the questions are such as may be-re-examined here under the twenty-fifth section of_the Judiciary Act.
 

 Theory of the .respondents is, that the respective libels were libels
 
 in rem
 
 to enforce a maritime lien in favor of th,e shippers of the cotton, under contracts of affreightment for the transportation of goods and merchandise from one port
 
 *635
 
 .to .another upon navigable waters, and that the State courts have no jurisdiction to employ such a process to enforce such a lien in any case; that the jurisdiction to enforce a maritime Ijen by a proceeding
 
 in rem
 
 is exclusively vested in the Federal courts by the Constitution of the United1 States and the laws of Congress. But the libellants controvert that proposition, and insist that the State courts have concurrent jurisdiction in these cases under that clause in the ninth section of the. Judiciary Act, which saves
 
 il
 
 to suitors in all cases the right of a common law remedy where the cómmon law is competent to give it.”
 
 *
 

 2. They also contend, if their first proposition is uot susT tained, that inasnauch as the three eases were heard together, under an agreement that they should be tried upon the same issues, and that the libeb filed by
 
 W.
 
 C. Boon & Company, as stated in the bill of exceptions, was selected as the case to be tried in the court where the suits were commenced, the-rights of the parties in the other two.cases must abide the decision of this court in that case.
 

 Assuming that to be so, then they contend that the State court had jurisdictioE in the fii’st case, because the contract of affreightment was for the transportation of goods and merchandise between ports and places in the same State. Impliedly, the argument admits that the rule is otherwise where the contract is for~the transportation of goods and merchandise between ports and places in
 
 different
 
 States; but the proposition is, that where the contract is between citizens of the same State, for the transportation of go Yds and merchandise from one port to another in the same State, the case is not one within, the jurisdiction of the admiralty courts of the United States, unless it becomes necessary, in the course of the voyage, to carry the goods or merchandise i.nto or through
 
 some 'other
 
 State or foreign dominion.
 

 Obviously the questions presented are questions of very great importance, as affecting the construction of the Federal Constitution, and the rights and remedies of the citizens
 
 *636
 
 engaged in an important and lucrative branch of commerce and navigation.-
 

 Judicial power to hear and determine controversies in admiralty, like other judicial power, was conferred upon the government of the United • States By the Federal Constitu tion, and, by the express terms of the instrument, it extends to all cases of admiralty and maritime jurisdiction; which, doubtless, must be held to mean all such cases of a maritime character as were cognizable in the admiralty Courts of the 'States at the time the Constitution was adopted.
 
 *
 

 Admiralty jurisdiction, as exercised in'the Federal courts, is not restricted to the subjects cognizable in the English courts of admiralty at the date of the Revolution, nor is it as extensive as that exercised-by the continental courts, organized under, and governed by, the principles of the civil law.
 
 †
 

 Ííest guides as to the extent of the adriiiralty jurisdiction of the Federal courts, are the Constitution of the United States, the laws.of Congress, and the decisions pf-this court.
 

 Two of the contracts of affreightment in these eases, were for the transportation of cotton between ports and places in different States; but-as the contract allégedin the libel filed in the first ease, was for the transportation of cotton from one port to another, in the same State, it becomes necessary to determine, irrespective.'of the questions presented in the other cases, whether such a contract is cognizable in the admiralty courts óf the United States, because, if not, the libellants, in any view of the case, must prevail, as there would be, in that state of the case, no jurisdiction in this court to re-examine the decision of the State court in that ease.
 

 Much controversy has existed as to the true extent of the admiralty and maritime jurisdiction of the Federal courts, but great aid will be derived in the solution of this que^cion by an examination of the decisions of this court at different periods since the judicial system of the United- States was organized.
 

 
 *637
 
 Principal subjects'of admiralty jurisdiction are maritime contracts and maritime torts, including captures
 
 jure belli,
 
 and seizures on water for municipal and revenue forfeitures.
 

 (1.) Contracts,'claims, or service, purely maritime, and touching rights' and duties appertaining to commerce and navigation, are cognizable in the admiralty.
 
 *
 

 (2.) Torts or injuries committed on navigable waters, of a civil nature, are also cognizable in the admiralty courts.
 

 Jurisdiction in the former case depends upon the nature of the contract, but in the latter it depends entirely upon locality. Mistakes need not be made if these rules are observed; btí’t contracts to be performed on waters not navigable, are not maritime any more than those made to be performed on land. Nor arc torts-cognizable in the admiralty unless committed on waters within the admiralty and maritime jurisdiction, as defined by law.
 
 †
 

 Such jurisdiction' whether of torts or of contracts, was, and still is, restricted in the parent country to tide-waters, as they have no large fresh-water lakes or fresh-water rivers which are navigable. Waters where the tide did not ebb and flow, were regarded in that country as not within the admiralty and maritime jurisdiction; and such was the decision of this court in the case of
 
 The
 
 Jefferson,
 
 ‡
 
 and the rule established iii that case was followed for more than a quarter--of a century.
 

 Attempt was'&ubsequently made to restrict the jurisdiction of the admiralty' courts in torts to cases arising on the high seas, but this court l\eld that it extended to all waters within the ebb and flow of the tidé, though
 
 infra corpus comilatus,
 
 and as far up the rivers emptying into the sea or bays and arms of the sea,, as the tide ebbed and flowed. And that rule, ever after it was promulgated, prevailed, and was universally applied by the District Courts in cases of collision.
 
 §
 

 Application of that rule was made by the Federal courts
 
 *638
 
 in collision cáses arising upon the Hudson, the Penobscot, the Kennebec, the Merrimae, the Alabama, and many other rivers navigable only between ports and places in one State.
 

 Exclusive original cognizance df all civil causes of admiralty and rharitime jurisdiction, was conferred upon the'District Courts by the ninth section of the Judiciary Act, including all seizures under the laws of impost, navigation, or trade of the United States, where the seizures are made on waters which are navigable from the sea by,vessels of ten or more tons burden, within their respective districts as well as upon the high seas.
 

 Remedies for marine torts, it is conceded, may be sought in the admiralty courts under that provision, although committed within the body of a county, but it is denied that redress can be obtained in the admiralty for the breach, of a contract of affreightment in a case where the port of shipment and the port of destination are in the same State.
 

 Eepeated attempts were made at an early day to induce the eourjb to hold that seizures on water were not cases of admiralty cognizance, and that contracts of affreightment were exclusively cognizable in the courts óf common law; but this court refused to adopt either proposition, and held that the entire admiralty power of the Constitution was lodged in the Federal courts, and that Congress intended by the ninth section of the Judiciary Act to invest the District Courts with that power as courts of original jurisdiction; that tlie phrase, “exclusive original cognizance,” was used for that purpose, and was intended to be exclusive of the State courts as -well as the other Federal courts.
 
 *
 

 When the case of
 
 The Lexington
 
 was decided, it was still supposed that the admiralty jurisdiction was limited to waters affected by the ebb and flow of the tide, but the case is a decisive authority'to show that the jurisdiction of the admiralty, in matters of contract, was understood to be coextensive with the jurisdiction in cases of marine torts.
 

 
 *639
 
 Subject-matter of the suit in the case of
 
 Waring et al.
 
 v. Clarke, was that of a collision, and the subject-matter in the case .of
 
 The Lexington
 
 was a loss of specie
 
 in transitu,
 
 under a contract of affreightment. Viewed in any light, those two cases settle the question that where the voyage and transportation are over tide-waters, the jurisdiction of the admiralty is the same in matters in maritime contracts as in.marine torts.
 

 Such was the state of the law upon the subject, as decided by this court, when the case of
 
 The Genesee Chief
 

 *
 

 was brought here for re-examination; and in that case this court held that the jurisdiction in admiralty depended, not upon the ebb and flow of the tide, but upon the navigable character of the water; that if the water was navigable, it was deemed to be public, and if public, that it-was l’egarded as within the legitimate scope of the admiralty jurisdiction conferred by the Constitution.
 

 Prior to that decision, the Western lakes arid navigable rivers of the United States, above tide-waters, were not supposed todbe waters within the admiralty and maritime jurisdiction of the Federal courts. Strange as that proposition majnow appear to one familiar with the provision contained in the ninth section of the Judiciary Act, it is nevertheless true that the rule restricting admiralty jurisdiction to tide-waters had prevailed from the organization of the judicial system to that date, but the effect of that decision was to dispel that error and place the admiralty jurisdiction upon its true constitutional and legal basis, as defined in the Constitution of the United States and the laws of Congress.
 

 Subsequent decision of this court, in the case of
 
 The Magnolia,
 
 was-, that the admiralty jurisdiction of the Federal courts extends to cases of collision upon navigable waters,, although the place of the collision may be within the body of a county and above the ebb and flow of the tide; and this court also held in that case that the District Courts exercise jurisdiction over fresh-water rivers, “navigable from the
 
 *640
 
 sea,” by virtue of the ninth section of the Judiciaiy Act, and not as conferred by the act of the 26th of February, 1845, which is applicable only to the “lakes, and navigable waters connecting said lakes.”
 
 *
 

 , . Direct proposition of the respondents in the case of.
 
 The
 
 Commerce
 
 †
 
 was, that the case before the court, which was a collision on the Hudson River, was not a case cognizable in the admiralty, because it did not appear that either of the vessels was engaged in foreign commerce,
 
 or,
 
 in commerce among the several States; but the court held that judicial power in all cases of admiralty and maritime jurisdiction was conferred by (he Constitution, and that in cases of tort the question of-jurisdiction was wholly unaffected by the considerations suggested in that proposition; and we reaffirm the rule there laid down, that locality is the true test of admiralty cognizance in all cases of marine torts; that if it appears, as in- cases of collision, depredations upon property, illegal dispossession of ships, or seizures for the violation of the revenue laws, that the wrongful act was committed- on navigable waters, within the .admiralty and maritime jurisdiction of the. United States, then the case is one properly cognizable i'n the'admiralty.
 
 ‡
 

 Navigable rivers; which, empty into the sea, or into the bays and gulfs which form a.part of the sea, are but arms of the sea, and are as much within the admiralty and maritime jurisdiction of the United States as the sea itself.
 

 Difficulties attend every attempt to define the exact limits of admiralty jurisdiction! but it cannot be made to depend upon the power of Congress to regulate commerce, as conferred in-the Constitution. They, are entirely distinct things, having no necessary connection with one another, and are conferred, in the Constitution, by separate and distinct grants.
 
 §
 

 Congress may, regulate commerce with foreign nations
 
 *641
 
 and,among the Several-States, but the judicial power; which; • among other things, extends to all cases of admiralty and maritime jurisdiction, was conferred upon the Federal government by the Constitution, and Congress cannot enlarge, it, not even to suit the wants of commerce, nor for the more convenient execution of its commercial regulations.
 
 *
 

 . Remarks, it is conceded, are found in the opinión of the court in the case of
 
 Allen et al.
 
 v. Newberry,
 
 †
 
 inconsistent with these views; but they were not necessary to that decision, as the contract in that case was for the transportation of goods,on one of the Western lakes, where the jurisdiction in admiralty is restricted, by an act of Congress, to steamboats and other vessels.....employed in the business of. commerce and navigation, between ports and places in different States and Territories.
 
 ‡
 

 No such restrictions are contained in the ninth section of the Judiciary Act, and consequently those remarks, as applied to a case falling within that provision, must be regarded as incorrect.
 

 Such a. rule, if applied to the commerce and navigation1 of ' the Atlantic coást, would produce incalculable mischief, as the vessels in many cases,.even iu voyages from one port in a State to another port in the same State, are obliged, in the course of'the voyage, to go outside of any particular State, and it would not be difficult to give examples where more than half the voyage is necessarily upon the high seas. Unless the admiralty has jurisdiction, in such a case, to enforce .the maritimes lien, in case of a collision oi jettison, it is difficult to see to what forum the injured party can resort for redress. Piracy, it is said, is justiciable everywhere, but it cannot; be admitted that maritime torts are justiciable nowhere.
 

 Unable to deny that the admiralty has jurisdiction over marine torte, though the voyage is between ports and places' in the-same State, the advocates of the more'restricted juris
 
 *642
 
 diction over maritime'.contráete- set' up a. distinction, and contend that the admiralty; jurisdiction over such contracts is limited by tne power granted to Congress to regulate commerce.’. Reference *may be made to the ease of
 
 Maguire
 
 v.
 
 Card,
 

 *
 

 as one.where-thaf distinction was adopted;, but the decisive 'answer to-that case, and the one preceding it in ■the .same volume, will be found in the later cases already referred to, and in the'.Case of'
 
 The Mary
 
 Washington,
 
 †
 
 where ‘ibe-'opinion,was given by the present Chief Justice. All three of the cases, therefore, as well the case of W. C. Boon & .Company as the other two, are cases within the admiralty and' maritime jurisdiction of the Federal courts.
 

 II. Suppose that to be so, then, it is contended by the 'libellants, in the second place, that'all three of the original actions were1 well brought in the State court as a court of Concurrent jurisdiction with the District Courts of the United States in admiralty, and that the particular remedy, given by thé statute of the-' State, and adopted in these cases, is ' within the true intent and meaning of the saving clause in ,thc ninth section of the Judiciary Act.
 

 Wherever a maritime lien arises the injured party may pursue his remedy, whether, for a breach of a maritime contract or for a marine tort, by a suit
 
 in rem,
 
 or by a suit
 
 in
 
 personam,, at his election. ' Attention will be called to three classes of cases only as examples to illustrate that proposition; but inanymbre might be given to the same effect.
 

 Shippers have a lien by the maritime law upon the vessel 'employed in the transportation of their goods and merchandise from one port to another, as a security for the fulfilment of the contract of the carrier, that he will safely keep, duly ■transport, and rightly deliver the goods and merchandise shipped on board, as stipulated iii the bill of lading or other .contract of shipment.
 
 ‡
 

 Owners of vessels damaged by collision, occasioned with- ■ out fault on their part, and wholly'through the fault-of those'
 
 *643
 
 in charge of the colliding vessel, also have a maritime lien on the vessel in fault as a security for such damages as may be awarded to them in the admiralty for the injury thereby caused to their vessel, and they may
 
 proceed,in rem,
 
 to enforcé their claim for the damages, or they may waive the lien and bring their suit
 
 in personam
 
 against the master or owners of the vessel.
 
 *
 

 Material-men, also, who furnish materials or supplies for a vessel in a foreign port, -or in a port other than a. pórt of the State where the vessel belongs, have a maritime lien on the vessel as a security for the payment of the price' of all such materials and supplies. They have such a lien because, upon the principles of the maritime law, such materials and supplies are presumed to be furnished on the credit of. the. vessel, and consequently they are entitled to proceed
 
 in rem
 
 in the admiralty court to enforce -the lien, but they are not compelled-to do so, as they may waive thé lien and bring-their suit
 
 in personam
 
 against the master or owners, as they are also liable as well as the vessel.
 
 †
 

 None of these principles are controverted, but the libellants contend that the State courts have concurrent jurisdiction to afford the parties the same remedies in all such cases. No warrant for that proposition, however, is found in the ninth section of the Judiciary Net, nor in any other part of-that fundamental regulation of our judicial system. On the contrary, the exclusive original cognizance of all .civil causes of admiralty and maritime jurisdiction is, by the very terms-of that section, conferred upon the District Courts of the' United States, “saving to suitors in all cases the right of a common law remedy where the common-law is competent to give it.” Nothing is said about a concurrent jurisdiction in a State court or in any other court, and it is quite clear that in all cases where the parties are citizens of different States, the injured party may pursue the common law remedy here
 
 *644
 
 described and ¡fayed,, in the Circuit Court of the district aa well'as in .the State'courts.
 

 Original cognizance is exclusive in the-District Courts, except that-'the suitor mgy,- if he sees 'ht, elect to pursue a .Common law-remedy in the State courts or, in the Circuit Court,' as before explained, in all cases where such a remedy iá applicable. Common law remedies are not applicable to enforce a maritime lien by a proceeding
 
 in rem,
 
 and eonse-' quently the original.-jurisdiction to enforce such- a lien by that mode of proceeding is exclusive'in the District Courts.
 
 *
 

 State legislatures have no authority to create a maritime lien,'nor can they confer any jurisdiction upon a State court to enforce such a lien by a suit or proceeding
 
 in rem,
 
 as practised in the admiralty, courts. Obsérve the language of the saving clause under consideration. , It is to suitors,, and not to-the State courts, nor to the Circuit'Courts of the United-States.,. Examined carefully it is evident that.Congress intended by that provision to allow the party to seek re;dress in the admiralty if he saw fit to do so, but not to make.it- compulsory in any ease where the common law is competeht to give him a remedy. Properly ■ construed, a 'party under that provision may proceed
 
 in 'rem
 
 in thé admiralty, or he may bring, a suit
 
 in personam
 
 in the same jurisdiction, or. he.may' elect not to go into admiralty at all, and may-resort to his corpmon law remedy, in the State courts or-in' the Circuit Court of .the United States, if he' can make proper parties to give that court jurisdiction of his Case.
 

 Undoubtedly most common law remedies in cases of contract and tort, as given in common law courts, and suits
 
 in personam
 
 in the- Admiralty courts, bear a strong resemblance to each other, and it is not, perhaps,' inaccurate to regard the two jurisdictions in--that behalf as concurrent, but there is no form of action at common law which, when compared with the proceeding in
 
 rem
 
 in the admiralty, can be regarded as a .concurrent remedy.
 

 
 *645
 
 Consignees or shippers may proceed in the admiralty
 
 'in rém
 
 against the vessel to enforce their maritime lien, or they may waive that lien and still proceed in the admiralty
 
 in personam
 
 against the owners of the vessel to recover damages for the non-fulfilment of fhe contract, or they may elect to bring a common action against the owners to recover damaged, as in other cases for the breach'of a contract to be ex- . eicuted on land.
 

 Proceedings in a suit at -common'law on a contract of-, affreightment are precisely the same as in suits on- contract^ not regarded as maritime, wholly irrespective of the fact that-the injured party might have sought redress in the admiralty.. When- properly brought, the suit is against the owners of . the vessel, and in States where there are attachment laws the plaintiff may attach any property 'ot exempted from execution, belonging to.the defendants.
 

 Liability of the owners of the ’vessel under the contract' being the foundation of the suit, nothing can finally be held' under the attachment except the interést of the owners in the vessel, because the vessel is held under the attachment as the-property of the defendants, and not as the offending thing, as in the case of a proceeding
 
 in rem
 
 to enforce a maritime lien. Attachment in such suits may be of the property of non-residents of of defendants absent from the • State, as in suits on contracts not maritime, -and the same rules apply in respect to the service of process and notice to the defendants.
 

 Applying these rules to the cases before the court, it is obvious that the jurisdiction exercised by the State court was of the precise character which is exclusive in the District Courts of the United States sitting in admiralty. Authority does not exist in the State courts to hear and determine a suit
 
 in rem
 
 in admiralty to enforce a maritime lien.
 

 Such a lien does not arise in a contract for materials and supplies -furnished to a vessel in her home port, and in respect to such contracts it is competent for the States, under the decisions of this court, to create such liens as their legislatures may deem just and expedient, not amounting to a
 
 *646
 
 regulation of commerce, and to enact reasonable rules and regulations préscribiug the-mode of their enforcement.
 
 *
 

 Contracts for .shipbuilding are held not to be maritime contracts,- and, of course, they, fall within the same category, but'in all cases where a maritime lien arises, the original jurisdiction to enforce the same by a proceeding
 
 in rem
 
 is .exclusive in the District Courts of the United States, as provided in the ninth section of the Judiciary Aet.
 
 †
 

 Respective ■ decrees reversed, and the several causes remanded, with instructions to
 

 Dismiss the respective libels.
 

 *
 

 Revised
 
 Code,
 
 §§ 3127, 3142.
 

 *
 

 1 Stat. at Large,
 
 77.
 

 *
 

 Waring et al.
 
 v.
 
 Clarke, 5 Howard, 454.
 

 †
 

 Bags of Linseed, 1 Black, 108.
 

 *
 

 1 Conklin’s Admiralty, 19.
 

 †
 

 The Commerce, 1 Black, 579; 2 Story on the Constitution (3d ed.),
 
 §§
 
 1666-1669.
 

 ‡
 

 10 Wheaton, 428.
 

 §
 

 Waring et al.
 
 v.
 
 Clarke, 5 Howard, 549.
 

 *
 

 The Lexington, 6 Howard, 390; The Vengeance, 3 Dallas, 297; The Betsey, 4 Cranch, 443; The Samuel, 1 Wheaton, 9; The Octavia, Ib. 20.
 

 *
 

 12 Howard, 457.
 

 *
 

 The Magnolia, 20 Howard, 296; 5 Stat. at Large, 516.
 

 †
 

 1 Black, 578.
 

 ‡
 

 2 Story on the Constitution, § 1669.
 

 §
 

 The Genesee Chief, 12 Howard, 452.
 

 *
 

 The St. Lawrence, 1 Black, 526.
 

 †
 

 21 Howard, 245.
 

 ‡
 

 The Hine
 
 v.
 
 Trevor, 4 Wallace, 555.
 

 *
 

 21 Howard, 249.
 

 †
 

 14 American Law Register, 692.
 

 ‡
 

 The Bird of Paradise, 5 Wallace, 545; The Eddy, Ib. 481; Bags of Linseed, 1 Black, 112 Maude & Pollock on Shipping, 254.
 

 *
 

 Sturgis
 
 v.
 
 Boyer et al., 24 Howard, 117 ; Chamberlain
 
 v.
 
 Ward, 21 Id. 553.
 

 †
 

 The St. Lawrence, 1 Black, 529; Manro
 
 v.
 
 Almeida, 10 Wheaton, 473; The Reindeer, 2 Wallace, 384; The General Smith, 4 Wheaton, 438.
 

 *
 

 The Moses Taylor, 4 Wallace, 411.
 

 *
 

 The General Smith, 4 Wheaton, 438; The St. Lawrence, 1 Black, 529
 

 †
 

 Ferry Company
 
 v.
 
 Beers, 20 Howard, 402.