Freeman, J.,
delivered the opinion of the Court.
This is a suit commenced in the city of Memphis by various parties for material furnished and repairs done on the steamboat Gallatin, together with accounts for* stores and supplies furnished, and work and labor performed for said boat in the port of Memphis, Mrs. Waggoner, the owner, residing in Shelby county at the time of the creation of ■ the indebtedness. Judgment was had in favor of all but three of the plaintiffs against the defendant, from which Mrs. Waggoner appealed, and the three plaintiffs who failed to recover, to-wit: The Memphis Dry Dock Company, J. F. Frank & Co., and A. Hunn, also appealed in error to this court.
Several questions preliminary to the main question debated are suggested and urged by Mrs. Waggoner’s counsel by way of objection to the proceedings, which we proceed to dispose of. It appears from the record that at the return term of the attachment the plaintiffs in the original petition for attachment filed their declaration in the usual form, to which the owner of the boat, Mrs. Waggoner, filed her pleas in abatement, one of which was to the jurisdiction of the court, and raised the question that the matter in controversy was a cause of civil admiralty jurisdiction of which the District Court of the. United States had exclusive jurisdiction. At the same term, however, and at the same *505 time perhaps, a plea in bar, in - the form of a general issue, to the liability alleged in the declaration was filed. The plea in bar, by answering the plaintiff’s action, overrules the denial in the plea of abatement, that the defendant was not bound to answer, and is waiver of the matter thus pleaded. 7 Yer., 105; 9 "Yer., 7. When the case was called for trial, and before the jury were empannelled or sworn, the “de-féndant moved the court to dismiss and quash the writ herein and to dismiss the suit,” which motion was overruled by the court. This is assigned as error in this court, and numerous formal grounds of objection are urged to the writ, affidavit, and proceedings in the case as reasons why it should have been sustained. They are all formal however, and such as might have been amended if defects at all, and the rule we have repeatedly announced as the proper practice.in all such cases is, that all objections by way of motion to defects in proceedings, which defects might have been amended in the court below, must specify the grounds of the objection so as to call the attention of the counsel and court to the point of the objection, or else we would not notice such objection. We think this rule should be ■ adhered to, as the opposite rule enables a -’party to make his formal motion. on the record, with no reason assigned or ground stated, and allow the same overruled by the court below, when, on appeal to this court, the real objection is presented, which, if the court below had heard, the motion would not have been overruled, or the defects might have been cured by amendment. It suffices, *506 however to say that the objections were all made, or the motion rather, after issue joined, and were waived by the plea of the general issue, which had been before put in by the defendants.
The leading question presented for decision in this case, on which the case must turn, is the one of jurisdiction. Have the courts of the State jurisdiction over the subject matter in controversy, or the contracts sought'to be enforced, or are they matters within the civil admiralty jurisdiction of the courts of the United States,o under sec. 2, Art. 3, of the Constitution of the United States, which extends “to all cases of admiralty and maritime jurisdiction,” and is now settled to be an exclusive jurisdiction in these courts. The proceeding is under the ' following section of the Code of Tennessee: Sec. 1991 which provides that “any debt contracted by the master, owner, agent or consignee of any steam or keel boat within this State on account of any work done, or materials or articles furnished for or towards the building, repairing, fitting, furnishing or equipping such boat, or for wages due to the hands of the same, shall be a lien upon such boat, her tackle and furniture, to continue for three months from the time said work is finished, or materials furnished, or said wages fall due, and until the termination of any suit that may be brought for said debt.” The mode of enforcing this lien is found in sec. 3550, and succeeding sections of Art. 3, ch. 2, of the Code.
The first of these sections provides for “ issuance of a warrant from a justice of the peace, Judge of the *507 Circuit or Chancery Court in the county in which the boat then is.” The nest provides, “the application shall be in writing, stating by whom and for what boat the debt was contracted, the items composing the debt, that it is justly due and unpaid, and demand has been made of some one of the defendants, being at the time in the county,” which petition is required to be sworn to by the petitioner or person applying for the warrant in his behalf. By sec. 3553 before issuing the warrant, bond shall be taken to prosecute the suit with effect, payable to the defendant, and in case of failure to pay all costs and damages to the defendant. See. 3554 provides that the warrant shall issue in the name of the petitioners against the owners of the - boats, or some of them, and direct the sheriff to attach the boat, tackle, etc. Sec. 3555 provides for a replevy of the boat on bond and security in double the amount of the debt. Sec. 3559 provides that when the warrant is returned before a magistrate, if the defendants do not appear at the time of trial, or when returnable into the Circuit Court, if they do not appear at the return term and plead, judgment by default shall be entered for the amount of the claims filed by all who have made themselves parties to the suit, and, upon motion, the court or magistrate shall enter judgment against the sureties on the defendants’ bond for the amount of the judgment and costs. If no bond has been given, the court shall then order the boat or such part of her furniture and tackle as may be sufficient, to be sold for the satisfaction of the judgment. These provisions are em *508 bodied in the Code as the substance of the Act of 1833, oh. 35.
We need not go fully into the history of the admiralty jurisdiction .of the District Court of the United! States in order to the settlement of the question raised on this record. It suffices to say, that the gradual advance of judicial decision, by which that jurisdiction has been immensely extended beyond the limits assigned it by the earlier decisions of the Federal Courts, is one of much interest as illustrating the influence of the pressure of new circumstances and real or supposed demands of the public and general good, in giving a construction to the language of a constitution intended to define and definitely settle the powers of the government created by it, in all probability very different from what was intended or thought of by the framers of that instrument. Up to the time of the Gennessee Chief v. Fitzhugh, 12 H., 443, decided in 1857, the admiralty jurisdiction of the District Courts had never been held to extend beyond the waters where the tide ehbed and flowed. Under the Act of 1789, known as the judiciary act, the 9th sec. of which provided that the District Courts shall have “exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, including all seizures under laws of import, navigation or trade of the United States, when the seizures are made on waters which are navigable from the sea by vessels of ten or more tons burden, within their respective districts, as well as upon the high seas, saving to suitors in all cases the right of a common law 'remedy, where the common law is com *509 petent to give it,” the contest was, for a length of time, between the Common Law Courts and the Federal Courts as to whether the latter had jurisdiction even in cases occurring on tide waters, when the same were within the body “of a country. This question was settled in favor of the Federal Courts, but we believe no case had before that of Gennessee Chief ever held that the District Court had jurisdiction over cases not arising on tide water. - This doctrine, however, was overturned in that case by an able opinion delivered by Chief justice Taney, in which he overruled all the. former decisions of the Supreme Court on this subject, and held, that the true exposition of the 9th sec. of the Act of 1789 was, that the jurisdiction was “made to depend upon the navigable character of the water, and not upon the ebb and flow of the tide.” If the water was navigable it was deemed to be public; and if public, was regarded as within the legitimate scope of the admiralty jurisdiction conferred by the constitution. See T2 H., C. ed., p. 241. He accounts for and shows in this opinion how the courts had been misled in their views of the extent of this jurisdiction, by adopting the English definition of a public river as being one where the' tide ebbs and flows, which he admits was a proper description of the public waters of England, because they were none of them navigable above the point where the tide reached, but holds this definition of a public river entirely too narrow to be applied to the very different circumstances of our country, where our great rivers and inland seas are navigable for the largest vessels *510 in some cases for a thousand miles or more beyond the reach of the ebb and flow of the tide. There is no question now but that this jurisdiction is firmly established on grounds not to be shaken.
Without further referring to cases on this aspect of the case/we come to the question presented by this record. Is this proceeding a case where the jurisdiction is in the admiralty courts of the United States, or is it a proceeding which can properly be carried on in the courts of our State, and over which they have rightful jurisdiction.
In the case of Hine v. Trevor, 4 Wal., 556, it was held that the grant of original admiralty jurisdiction by Act of 1789 js exclusive, not only of all other Federal courts, but of all State courts, and that the statute of the State of Iowa giving a remedy for marine torts, and on marine contracts against the vessel, was unconstitutional and void. This case was one, however, of marine tort, being a case of collision on the Mississippi river. The reasons given by Mr. Justice Miller in that case why the statute was void, or rather the particular features of the statute pointed out as objectionable, are important in their bearing on the validity of the present proceeding under our statute. He says: “The remedy pursued in the Iowa Courts in the case before us, is in no sense a common law remedy. It is a remedy partaking of all the essential features of an admiralty proceeding in rem. The statute provides that the vessel may be sued and made defendant without any proceeding against the owners, or even mentioning their names; that a writ *511 may be issued and the vessel seized on filing a petition similar in substance to a libel; that after a notice in the nature of a monition, the vessel may be condemned, and an order made for her sale, if the liability is established for which she was sued.” This is said in answer to the argument that the statute of Iowa was within the clause of the Act of 1789, which “saves to suitors, in all cases, the right of a common law remedy where the common law was competent to give it.” The court, however, then goes on to distinguish this proceeding, not only from the common law remedy by suit in personam, but also from what are called suits by attachment. He says, p. 571, “in these cases there is a suit against a personal defendant by name, and because of inability to serve process on him on account of non-residence, or some other reason mentioned in the various statutes allowing attachments to issue, the suit is commenced by a writ directing the proper officer to attach sufficient property of the defendant to answer any judgment which may be rendered against him. This proceeding may be had against an owner or part owner of a vessel, and his interest thus subjected to sale in a common law court of the State.” This may be done, he adds, “all in consistence with the grant of admiralty powers in the 9th section of the judiciary act. In the case of “ The Moses Taylor,” 4 Wal. R., 425, a statute of California was held unconstitutional as giving admiralty jurisdiction to a State court, which provided that the action in the cases enumerated in the statute might be brought directly against the steamers, vessels or boats by name, and the *512 process served on ' the master, mate, or any person having charge of the same, and if a judgment be recovered by the plaintiff the boat or vessel be sold to discharge the same. This was a case of a contract for transportation ■ of a passenger by sea from San Francisco to Panama, and was -clearly a maritime contract, as said by Judge Field delivering the opinion of the court, “it related exclusively to a service to be performed on the high seas,” and that by virtue of -the contract the liability for its performance attached both to the owner and the ship, and was an appropriate subject of admiralty jurisdiction. He then points out the distinguishing features of a proceeding in admiralty in such cases. In such a suit the 'vessel is itself seized and impleaded as the defendant, and is judged and sentenced accordingly. The court holds in this case, as we understand it, that the statute was void because of the fact that it was the vessel that was proceeded against, and not an action in personam against the owner, in which the vessel was incidentally attached, to be held subject to the satisfaction of a personal judgment to be rendered against the owner, the debtor. In other words, that'it was a pure proceeding in rem. That this is the proper construction of the language of this opinion is, we think, sustained by the opinion of the same court, by Mr. Justice Clifford, in the case of Leon v. Galceran, 11 Wal., 185. That was a suit by personal action, or in per-sonam, against the owner of a ^schooner, to recover mariner’s wages, and to enforce and have the benefit of a lien or “privilege” in favor of the plaintiffs, *513 given by the law of Louisiana by virtue of a writ of sequestration to be levied on the res, a proceeding very similar to our proceeding by an attachment. The court held that a party in such cases might, at his election, either bring ‘his suit in District Court by a proceeding in rem. against the ship, or ship and freight, or in personam by libel in the same court; or if he chose, bring his suit in a State court by an action at law, or in Circuit Court of the United States where he and his debtor are citizens of different States as in ' other eases of concurrent jurisdiction between State and the Federal courts, and this because the common law was in such case competent to give the remedy, and it is secured to him by the saving of the judiciary act of 1789. It was insisted that the cases of The Moses Taylor and The Hine v. Trevor, held differently, and that the court in those cases had held that when the subject matter of the contract was such that the District Court had jurisdiction to proceed by the admiralty proceeding in rem., a party could have no remedy in a State court. This idea however is rejected by the court, and held inconsistent with the explanations given of the grounds of those opinions, and it is laid down that they expressly recognize the right of the suitor to his common law action and remedy by attachment. See p. 191. Common law remedies are not competent, says the judge, to enforce a maritime lien by a proceeding in rem., and consequently original jurisdiction to enforce such a lien by that mode of proceeding is exclusive in the District Court, which is precisely what is decided in the *514 three cases to which reference is before made, one of them the Belfast, 7 Wal., 642, from which we have not quoted in this opinion. From this explanation of the principle of these decisions it is clear that it is not the nature of the case, or the subject matter thereof that gives the exclusive jurisdiction in the one case or the other to the Federal or the State court, but the nature of the remedy. That is, whether it be a proceeding in rein, against the vessel itself, in which the vessel is defendant, or a proceeding in personam, where the owner is defendant and the vessel simply impounded by a writ of sequestration as in Louisiana, or attachment as in our State, to answer and satisfy the personal judgment rendered against the owner, debtor, when the debt is ascertained. While as an original question we might have doubts of the soundness of this principle by which to test the question of jurisdiction in the admiralty courts 'as solely dependent on the form of the remedy, rather than the nature of the right to be enforced,, the language of the constitution being that the judicial power extends to all cases of admiralty and maritime jurisdiction, not to' all cases of proceedings simply in rem. against the vessel, yet as the exposition of this power by the only tribunal, having the right authoritatively to settle it, we cheerfully follow the rule as we understand it thus declared.
Applying the principle above announced to the proceeding before us in accordance with our statute, the question is, does it present the objectionable features that are held to defeat the jurisdiction of the State courts, and is the remedy provided such a one as the *515 State courts are inhibited from administering? This depends on the question whether the proceedings contemplated by our statute, the provisions of which we have substantially quoted, are proceedings in rem., that is against the boat alone, the vessel being the defendant, or whether it, on the contrary, contemplated a proceeding in personam in which the owner should be defendant, and a personal judgment rendered against such owner and an attachment fastened upon the boat to secure the property to answer and discharge the iudgment on the debt so ascertained. This statute has been twice* before this court, first in the case of Hill v. Mills et al., 9 Hum., 629, when the only question presented for decision by the court was whether parties not citizens of the State were entitled to the remedy given by the statute, and it was held that the question of domicil or citizenship was not material to the use of the remedy, but it was' sufficient if the debt was contracted here, and the boat be here. The question of jurisdiction, as between the Federal and State courts, was not alluded to or raised in the ease. The other case, Greenlaw v. Potter, 5 Sneed, 391, when the main question decided was whether a liability for groceries and provisions furnished the boat by plaintiff was such a debt as was provided for by the terms of the statute, and it was held that it was. It was also held that the court did not err in rejecting •evidence offered to prove that at the time the supplies were furnished the boat was let under a charter party, and the charterer bound to discharge all debts eon- *516 tracted by or for the use of the boat during the term of his contract. Judge Turley, in the opinion says, "This contract was a matter between the parties to the contract, with which the creditors of the boat had nothing to do.” “ The proceeding contemplated by the ■ statute is against the boat. The suit it is true is required to be against the owners of the boat or some one of them by sec. 4 of the Act of 1833, but this is not' for the purpose of enforcing satisfaction of the debt by a judgment against them personally.” It is obvious that if this proposition is to be considered as decided, and not a mere dictum, or in either case, is the sound exposition of the statute, then, under the decisions we have referred to, the statute is unconstitutional as a proceeding in rem., and the remedy given one which the State courts have not jurisdiction to administer.
ÍTotb. — See Emory etc. Co. v. Wood, 6 Heis., 198.
*516 We are inclined to the view that the expression last quoted was not absolutely necessary to the decision of the question before the court, but waiving that, we proceed to examine the correctness of the exposition of the statutory provisions as thus stated by the court.
The statute-, it is admitted by Judge Turley, requires that the suit be against the owners of the boat or some one of them. It would naturally suggest itself it seems to us, why make the owners defendants and require the suit, to be brought against them if no debt is ascertained against them, and no judgment is to be rendered on such ascertainment against such parties defendants? The Code, however, in its provisions, seems evidently, as we think, to contemplate *517 not only that the owner or owners should be parties, but that they should be defendants to the suit in the precise sense in which parties are defendants in other like cases of enforcement of debts.
- The fourth requirement as to the statements of the petition is, “that demand has been made of some one of the defendants, or of the captain or agent of the defendants, being at the time in the county.” If this is made of the defendant, required to be a party by the statute, it must be an owner of the boat, for the warrant is to be issued “against the owner or owners” by sec. 3554, so that he is contemplated as being in the jurisdiction at the time. If made of the captain, or agent, either as representing the owner, he will be notified of the demand, and readily inform their principal of the existence and nature of the claim. But passing from this, the section referred to, 3554, expressly requires the warrant to issue against the owner of the boat, and also “shall direct the sheriff to attach the boat,” etc. Sec. 3553 requires the bond for prosecution of the suit to be payable to the defendants, that is, the owner or owners, required to be made parries in the succeeding section. Sec. 3559 authorizes a judgment by default if the defendants do not appear at the trial before the magistrate, or in the Circuit Court, if they do not appear at the return term and plead, and then on motion the court or magistrate shall enter judgment on the defendants’ bond, when the boat has been replevied, for the amount of the judgment and costs. If no bond has been given the order shall be for the sale of the boat for satisfaction *518 of the judgment. These provisions evidently contemplate a proceeding in personam against the owner or owners of the boat, and a judgment against them on appearance and plea as in other cases, or on failure to appear by default, and when bond has been given and the boat replevied, a judgment in favor of the plaintiff, on such bond against the sureties on the bond, for the amount of the judgment and costs rendered against their principal, the owner of the boat; for if a bond has been given, no judgment is to be rendered against the boat, the language being, “but if no bond has been given the court shall then order the boat sold, etc.” We think the ■ real object of the statute was and is to give a suit in personam against the owners, making them liable for debts such as are mentioned contracted for their boat, and when the warrant is issued against them it involves the idea that it should be served on them personally, if to be found, as well as to attach the boat. If not served on them, then the idea of the statute is they are brought in by service of process on their property, and this is made notice to them, and gives the court jurisdiction to render the judgment against them, to be satisfied out of their property by sale in the event no bond has been given. It is true no publication is required by the statute to give notice in this way to the owners when not served with process, but the fact that the boat would' necessarily be in -possession of the captain or master, or some other agent of the owner would be. as effective means by which such owner would receive notice of the attachment of his property as a publica *519 tion in a newspaper, and in many eases far more effective, as publication by means of a newspaper as a means of actual notice, is, as we know, in most cases merely illusory. In fact its effect is largely useful to give notice to the friends of the party whose property is attached who reside where the suit is brought, and notice given to the real party through them. We can see no. sound or practical objection to this view of the case, and 'in favor of sustaining the jurisdiction of our own State tribunals to enforce contracts such as are provided for in the statute made within our own territory, and usually with our own mechanics or tradesmen, we think we should lean rather towards that construction of our statute that will sustain the jurisdiction than to that which would defeat it.
• The warrant in this case issued by the justice, returnable to the Circuit Court, is in the name of the plaintiff against “Mrs. E. S. Waggoner, owner of the steamboat Gallatin,” and claims that she is indebted to plaintiffs, and commands the sheriff to attach the boaf. It is defective, we think, in not commanding also the sheriff to summon the said debtor, if to be found, as we think this was by fair construction the purpose of the statute, but defendants had waived any defect of service or want of command of this kind in the writ by appearing, replevying the property, and pleading to the declaration filed in the cause. This declaration is against the owner in the usual form, claiming that she owes the plaintiffs the amount of the accounts referred to in the petition for the warrant for supplies furnished the steamboat Gallatin. In this *520 view of the proceeding given by the statute, it is not a proceeding in rem. in which the vessel is defendant, but one in personam, in which the boat is held by attachment to answer and discharge the personal judgment to be rendered against the defendant, owner, and therefore is not under the principles laid down in the cases we have cited in violation of the constitution of the United States nor such a proceeding as belongs exclusively to the jurisdiction of thé District Courts of the United States.
This case, it is proper to add, was tried by a jury on the issue joined between the parties, who returned a verdict for a portion of the plaintiffs, and a regular judgment rendered in pursuance of the views expressed in this opinion, a replevin bond having been executed by the owner, judgment was also regularly entered on motion for the amount of the judgment against the sureties on said bond.
We have thought it proper to give the construction of the statute on this question in order to settle the question of conflict between the two jurisdictions, in this proceeding under the later decisions of the Supreme Court of the United States, presenting principles different from what prevailed at the time of the passage of the Act of 1833, and when the two decisions of our own court were made.
The jurisdiction of the State courts could be maintained however in this ease, as to all the matters in controversy, except the claim of Frank & Co., on a different principle growing out of the fact that the port of Memphis was the home port of the steamer *521 at the time of making the contract. The rule laid down on this subject is thus stated by Mr. Justice Clifford in the case of the Belfast, as to a maritime lien. He says, “such a lien docs not arise in a contract for materials and supplies furnished to a vessel in her home port, and in respect to such contracts it is competent for the States, under the decisions of this court, to create such liens as their Legislatures may deem just and expedient, not amounting to a regulation of commerce, and to enact reasonable rules and regulations prescribing the mode for their enforcement, but in all cases where a maritime lien arises the original jurisdiction to enforce the same by proceeding in rem. is exclusive in the District- Courts of the United States, as provided in sec. 9 of judiciary Act.” See also The General Smith, 4 W., 438; 1 Black, 529.
The case of Frank & Co. was a case of affreightment and failure to deliver articles shipped on board the boat. This not being one embraced in the provisions of the statute, the jury were properly instructed to find against it, as the law did not authorize a recovery under this proceeding on Such a claim.
On the trial of the case the court refused to allow proof of the claim of the Memphis Dry Dock Co. and of A. Hunn because the items of the account were not set out in the petition for writ of attachment, as required by the statute. The declaration, however, had charged the indebtedness for the amount due, and defendant without objection to the defect in the writ, had taken issue on the allegations of the *522 declaration, and we think his Honor erred in refusing the usual proof of the indebtedness, in the usual way, on the trial. For this error the case will be reversed and remanded, as to these two plaintiffs, for a new trial. The judgment will be affirmed as to the other parties.