COLLARD, Plaintiff in Error, *vs.* EDDY, Defendant in Error.

1. Where a boat lying at the St. Louis levee, having no person on board, was broken loose from her moorings in broad day light by a gorge of ice, and drifted down the river fifty or sixty yards, when she was caught and secured by the plaintiff, *it was held,* that he was not entitled to salvage under the act on that subject, (R. C. 1845.)

*Error to St. Louis Court of Common Pleas.*

*H. N. Hart,* for plaintiff in error.
*Todd & Krum,* for defendant in error.

RYLAND, Judge, delivered the opinion of the court.

This was an action of debt for $600 for salvage. It appears that on the 1st of January, 1852, the ice in the Mississippi river breaking loose above the port of St. Louis, floated down with such force and power as to break from *the moorings* several barges and steamboats at the wharf—sinking the steamer Jewess and some barges, and causing the steamers Minnesota and Kingston to part their cables. When the Kingston parted her cable, there was no person on board. The plaintiff caught hold of the broken hawser, called for help, and by the aid of others fastened the hawser to a ringbolt on the levee; he then got aboard, and with the assistance of others secured and fastened the Kingston, so that it was delivered up to the master or agent. The boat had floated down from where the cable was parted, about fifty or sixty yards, before the plaintiff succeeded in fastening it to the shore. That the ice was

jammed all around the Kingston.; that before the plaintiff fastened the boat, the Minnesota had, in passing down, crushed in the blacksmith shop of the Kingston. The boat was supposed to be worth from $2,500 to $3,000, and was the property of the defendant, Eddy. The plaintiff made oath before a justice of the peace, as required by the statute in case of salvage—afterwards sued the defendant for $600. The court below decided, that the facts did not constitute salvage under our act of the legislature, and that the plaintiff could not recover. Judgment was rendered for the defendant, and the plaintiff brings the case here by writ of error.

1. The first section of the statute concerning salvage, R. C. of 1845, p. 984, is in these words : " When any boat, vessel, raft, or other property shall be lost or wrecked, and in a perishable condition, upon any river, any person may take up and secure the same at or near the place where found."

Sec. 2. " When any person shall set up claim to such property, and shall prove his title to the same by competent testimony before any justice of the peace of the proper county, such taker up shall restore the same to such owner, if he pays such taker up a premium for salvage at the rate of. twenty per centum upon the value of all such property."

The third section gives the right to sue in debt or in an action on the case for the salvage.

The fourth section requires the taker up to make oath " *that the property was wrecked or lost without the consent of the owner, as he believes, and was in a perishable condition.*"

Was the steamer Kingston subject to salvage under the circumstances of this case ? Could the boat be considered as lost or wrecked and in a perishable condition, at the time the plaintiff caught hold of the hawser up to the time it was secured to the shore ?

The counsel for the defendant contends that the word "lost" has its correlative in this statute in the word " found," and property must be in the condition to be " found," before it can be the subject of salvage under this statute. There is a differ-

ence in the words "lost" and "wrecked" in their marine signification, and this is well taken by the defendant's counsel. A vessel "lost" is one that is totally gone from its owners against their will, so that they know nothing concerning it, either whether still existing or not. Or one which they do know is to them no longer within their use or control, either from capture by an enemy or pirates, or by a known foundering, or by a sinking by a known storm or collision; or by a total destruction by shipwreck. But a vessel is wrecked by being stranded or going upon the shore, snags or rocks; the consequence may be a total loss or a partial loss or a temporary disability. A loss, then, is consistent with the fact of the vessel, raft or other property still being in existence, though its location be unknown to its owners, and therefore as to him is "lost," and it may be found and become the subject of salvage under our statute. So a wreck, to be within the statute, its condition must be such, as its owner is ignorant of, at the time the person claiming salvage saves it, otherwise it could not be said to be "found."

Here a steamboat, in day light, in the port of the city of St. Louis, is by the floating ice parted from her moorings; no person on board; a man seizes the broken hawser, calls for aid, fastens the hawser to the levee, gets on board and before the steamer descends double its length, he secures and delivers it to the master or agent. The boat was in a dangerous situation, the ice thickly pressing around it, and its blacksmith shop broken in by another loose boat. Under all these circumstances, can this steamer be brought within the meaning of our salvage act? It is the opinion of this court, that it cannot—that no such a case was in the contemplation of the legislature.

The judgment of the court below being for the right party, is, by the concurrence of the other judges, affirmed.