CAVENDER & ROWSE, Appellants, v. STEAMBOAT FANNY BAR-
KER, Respondent.

1. *Boats and Vessels—Courts—Jurisdiction—Admiralty.*—Stores and supplies
furnished to a steamboat at the home port in this State do not give an ad-
miralty or maritime lien so as to oust the jurisdiction of the courts of this
State, and the remedy given by our statute may be enforced against the
boat by name.  See *post* Boylan et al. v. St. Bt. Victoria, Hogan et al. v
St. Bt. Minnie, and Connolly v. St. Bt. Bee.

2. *Boats and Vessels—Seamen's Wages—Stores and Supplies.*—A party claim-
ing a lien upon a boat upon account of moneys advanced to pay for wages
due, or stores or supplies, must show that the money was advanced with
the understanding that it should be used specifically for the purchase of
supplies, for which the statute gives a lien.  See *post* Gibbons et al. v. St.
Bt. Fanny Barker.

*Appeal from St. Louis Circuit Court.*

The "Fanny Barker" having been sold by order of the St.
Louis Circuit Court, notice was published requiring all per-

sons having lien claims to file the same in said court. Pursuant to such notice, the appellants on the 4th day of October, 1866, filed an account containing one item, viz., " supplies, consisting of moneys furnished for the use of said steamboat at the request of the agent thereof, $10,000.

On the 18th of October they filed an amended account for $4,262.88, " moneys advanced for purchasing supplies, paying wages, &c., at the request of the agent of said boat." The last account alleges that the money was advanced upon several days therein stated, in various sums, commencing on the 2d day of January, 1866, and ending on the 29th March of same year.

The appellants went to trial upon the last mentioned account for $4,262.88, without any pleadings being made up. A large number of lien creditors appeared (as well as her then owner, but who had purchased her subsequent to the time when the alleged demand of the plaintiffs accrued) and contested plaintiffs' recovery.

It appeared upon the trial (by the court) that the respondent was one of thirteen boats belonging to the " Johnsonville Packet Company"; that said company, on the 2d of January, 1866, borrowed $10,000; on the 4th of said month, $10,-000, and on the 8th of January, 1866, $10,000. All these sums were loaned upon the notes (which notes were not, nor were any of them surrendered, or offered to be surrendered, at the trial) of said company, endorsed by Nolan & Caffrey, and for which loans stock of said company amounting to $100,000 was hypothecated to the plaintiffs as security;' also, that these loans were procured through the agency of one Stephen Haskell, the agent of said company in procuring the January loans, but had no authority except to sell the notes upon their own credit and that of the pledge of stock.

It further appeared that on the 24th day of March, 1866, said Johnsonville Packet Company borrowed $5,000 from claimants upon the notes of the company, endorsed by Nolan & Caffrey; all these notes had been renewed except that dated January 8, 1866, which was paid at maturity.

Rouse, one of claimants, testified that said Haskell informed him of the purpose for which the January loans were wanted, and that the claimants obtained the money upon the credit of the property of the company, including its thirteen boats and its barges; but one witness testified that said Rouse had informed him that he (Rouse) had made said January loans upon said stock at the rate of thirty cents on the dollar. Witnesses Caffrey and Rouse testified that the loan made March 24, 1866, was needed that afternoon to pay off laborers, deck hands, &c., in order to enable the company to send off two boats the same evening.

The claimants examined Frank Knoble, treasurer and bookkeeper of said Johnsonville Company: who stated that he received the proceeds of said loans, less the discount; that he could not tell from the books of the company how any of the money thus raised was used; that it was collected and paid out as other money belonging to said company, &c.— There was no evidence as to the application of the money, or that any part thereof was used by the respondent. At the close of the case, they asked the following instructions:

1. If it appear from the evidence that the claimants advanced to the Johnsonville Packet Company divers sums of money, from time to time, in January and in March, 1866; that said packet company was then the owner of a line of steamboats of which the "Fanny Barker" was one, and which boats were used in navigating the waters of this State; that said advances, or either of them, were made by the claimants upon the representations of the company, or its agents, that the money was needed "to keep the steamboats running," or to meet current expenses of navigating them, or for the purchase of supplies, then the said advances constitute a lien upon said steamboat Fanny Barker to the extent to which they were applied to her use and benefit.

2. If it appear from the evidence that the Johnsonville Packet Company had a common fund composed partly of money borrowed from the claimants in the manner, upon the representations and for the purposes stated in the forego-

16—VOL. XL.

ing instruction, and partly from money derived from other sources, that said packet company used said common fund indiscriminately to pay its indebtedness and to furnish its boats with the means of running in their ordinary business, the presumption is that the money borrowed of claimants was used as far as necessary for the last named purpose, and it should be considered to have been so applied.

The court refused all said instructions, and, of its own motion, gave the following:

"The court decides as the rule of law governing this case, that money advanced to pay the debts of a boat already accrued for running expenses or supplies, gives no lien upon the boat; but that to establish his right to a lien the claimant must show affirmatively that he advanced his money to pay future expenses or for supplies yet to be furnished; and if the claimant thus establishes his right, it is no valid objection to his claim that the same owner had several boats to whom the claimant made such advances for all the said boats, without designating the amounts to be used by each, provided the amount used by or for each boat is satisfactorily shown; and then the lien against each boat is to the extent of the advance used for its benefit."

The claim was rejected.

*S. Holmes* with *Harding*, for appellants.

Money loaned to a vessel to procure supplies, or to pay off a lien debt for supplies still subsisting, will constitute a new lien in favor of the lender. The court below decided the converse of this proposition in declaring the law to be, that "money advanced to pay debts of a boat already accrued for running expenses or supplies, gives no lien upon the boat; but that to establish his right to the lien the claimant must show affirmatively that he advanced the money to pay future expenses."—Phelps v. St. Bt. Eureka, 14 Mo. 532; St. Bt. Lebanon v. Grevison, 10 Mo. 537; Doans v. Child, Davis' U. S. Dist. Ct. R. 71; Abb. on Ship. 177 (Am. ed.)

A party furnishing supplies is not bound to prove that he

looked to the lien as a security for his debt, or that he made his advances upon the faith of it, or that he contracted for a lien at the time.—The Gustavia, 2 Blatch. & Howl. 189.

The statute creates the lien upon the mere fact of furnishing the supplies, without more. The creditor's intention has nothing to do with the operation of the law. To be sure, he may never avail himself of the lien ; he may release in terms, or he may act so as to divest it, or by doing something inconsistent with his right to enforce it.—Barge Resort v. Brooke, 10 Mo. 532.

The court will look to the maritime law for the principles of its decisions, our statute being thence borrowed—St. Bt. Raritan v. Smith, 10 Mo. 527 ; 1 Pars. Mar. Law, 501 ; Gardner et al. v. Ship New Jersey, 1 Pet. Adm. R. 226.

By the express terms of our statute, the contracts of the owner for supplies are put on the same footing and are governed by the same principles as contracts by the master, so far as the creation of the lien is concerned—R. C. 1855, tit. Boats and Vessels—Ship Racket, 3 Mason, 255.

It is clear by the general maritime law that a party whose goods are sold for supplies has a lien on the ship. Bee Adm. R. 116 ; ibid. 264—the master has the same lien for advances made by him, which may be enforced in admiralty.—Emerigon on Mar. Loans, ch. 12, § 4, p. 234.

It appears from the cash book that money was used by the boat, subsequent to the loan, for these three purposes :—1. To return charges collected by the boat and used to pay expenses ; 2. To pay for supplies already furnished to the boat ; 3. For future expenses. In the first case, a lien is created by general maritime law—vide case of ship Racket, above cited ; in the 2d, the case of the Eureka is in point ; in the 3d, there can be no question whether the money borrowed was properly appropriated or not.

Pride of the West, 12 Mo. 371—the court there says, " If the purpose for which the money is borrowed is made known at the time, a subsequent misappropriation will not affect the lien." It is not necessary for the material man to show that

the supplies furnished were really necessary—The Gustavia, Blatch. & Howl. 189.

*Rankin & Hayden,* for respondent.

The evidence in this case shows conclusively that the claimants discounted from time to time the notes of the Johnsonville Packet Company, endorsed by Nolan & Caffrey; and that such discounts were made upon the faith and credit of said endorsers and $100,000 worth of the stock of said company. That such loans or discounts were procured by, and made to and under contract with, one Stephen Haskell, who was only authorized to negotiate said notes for said Johnsonville Company, and in no other sense an agent of the company.

There is no proof that the claimants advanced one dollar to the Fanny Barker, or her master, owner, agent, or consignee, for her crew; nor is there any evidence that they advanced or furnished any money for such purposes as the law could give them a lien for.

The demand to be a lien on the Fanny Barker must be a debt contracted by her master, owner, agent, or consignee, and must be for supplies furnished for her use, or for such purposes as the law confers a lien therefor.—R. C. 1855, p. 303; Childs v. St. Bt. Brunette, 19 Mo. 518.

All the notes were renewed from time to time; they were not produced at the trial, nor was the offer made to cancel or surrender them. This is a full defence to plaintiffs' case. —St. Bt. Charlotte v. Lumm, 9 Mo. 63; Ramsey v. Allegre, 12 Wheat. 64; 29 Vt. 165. The court declared the law of the case correctly—Gen. Brady v. Buckley, 6 Mo. 558; Bryan et al. v. Pride of the West, 12 Mo. 371; Bailey v. St. Bt. Concordia, 17 Mo. 357.

The first instruction asked by appellants was properly refused. 1. Money advanced to the owner of a line of steamboats to keep them running, or to meet the current expenses of running them, constitute no lien on any of said vessels. 2. The application of the money, thus loaned, to the use of

Cavender et al. v. St. Bt. Fanny Barker.

any particular vessel of the line, cannot affect the question of lien or no lien ; that question must be determined from the facts and circumstances existing, when and upon which the money was advanced.

The same objections apply to the second instruction asked by the appellants, as well as the following : "Had the court jurisdiction of this case to enforce the new boat and vessel act ? Is that act unconstitutional as applied to this case ?" These questions are submitted to the court under the decission of the Supreme Court of the United States in the case of Ad. Hine v. Trevor, No. 178, Dec. term, 1866, 4 Wal.

WAGNER, Judge, delivered the opinion of the court.

When this case was called for argument, a question was raised as to the jurisdiction of this court touching the subject matter. The doubt was suggested on account of a decision rendered by the Supreme Court of the United States, at its last December term, in the case of steamboat Ad. Hine, v. Trevor. The main point ruled in that case is, that wherever the District courts of the United States have original cognizance of admiralty causes by virtue of the act of 1789, that cognizance is exclusive, and no other court, State or National, can exercise it, with the exception always of such concurrent remedy as is given by the common law. The facts in the case were, that a collision occurred between the steamboats Ad. Hine and Sunshine, on the Mississippi river, at or near St. Louis, in which the latter vessel was injured. Some months afterwards, the owners of the Sunshine caused the Ad. Hine to be seized while she was lying at Davenport, Iowa, in a proceeding under the laws of that State, to subject her to sale, in satisfaction of the damages sustained by their vessel. The owners of the Ad. Hine interposed a plea to the jurisdiction of the State court, which being ruled against them, they carried the cause to the Supreme Court of the United States, where the decision of the Supreme Court of Iowa was reversed and the cause remanded, with direction to dismiss the same for want of jurisdiction.

This matter being brought up just at the close of the present term, we are precluded from going into a general examination of the question, and will attempt nothing more than to state our conclusion. There can be no doubt that the remedy pursued in the case of the Ad. Hine in the Iowa courts was essentially an admiralty proceeding *in rem*. The collision occurred on the navigable waters of the United States, beyond and without the jurisdiction of Iowa, and the courts of that State assumed cognizance over the cause. It is, we suppose, settled that the admiralty jurisdiction of the United States District courts embraces all maritime contracts, torts, injuries, or offences. But the question is, what contracts or what torts are maritime ? A learned writer on this subject says : " We may say that within this term are certainly included salvage, bonds of bottomry, respondentia, or hypothecation of ship and cargo ; seamen's wages ; seizures under the laws of impost, navigation or trade ; and cases or questions of prize or ransom. Nor should we hesitate to place, with almost equal certainty with these, all charter parties and contracts of affreightments *on voyages* made between different States."—2 Pars. Mar. Law, 509. Maritime contracts, in the sense used in admiralty practice, originated partly in necessity and partly in convenience. A contract may be a land contract, although it relates to a ship, or a boat, or a cargo, or voyage, unless every contract is necessarily maritime which relates to property which is water-borne, and we do not think that the word has, in law, such an extensive signification. Judge Leonard, in Hays v. St. Bt. Columbus, 23 Mo. 232, speaks of the statute as constituting secret, tacit mortgages upon the boats, rather than liens in the common law acceptation of the word, being unconnected with the possession. The proceeding is *in rem* against the boat, but the Legislature might authorize that remedy if the State courts were not prohibited from taking jurisdiction. The case here exclusively concerns our own citizens. The contract was made with the owner in the home port, and we do not believe that it is so essentially mar-

itime in its character as to make it solely cognizable in the United States District courts, or to deprive the State courts of jurisdiction under the statute. We frankly admit that, after perusing the opinion of Judge Miller in the case of the Ad. Hine v. Trevor, we have arrived at the conclusion with some hesitation, and we are gratified that from this decision the parties may, if they see proper, have this question, which is now for the first time raised, finally determined and set at rest.

The plaintiffs base their claim on the second subdivision of the first section of the statute concerning Boats and Vessels, which provides that every boat or vessel used in navigating the waters of this State, shall be liable and subject to a lien for all debts contracted by the master, owner, agent, or consignee of such boat or vessel, on account of stores or supplies furnished for the use thereof, or on account of labor done or materials furnished by mechanics, tradesmen, or others, in the building, repairing, getting out, furnishing or equipping thereof. The defendant was one of the boats belonging to what was known as the "Johnsonville Packet Company," an incorporated company, and one Haskell, a bill broker, was the financial agent for procuring loans for the company. The plaintiffs made their loans to the company through Haskell, and received as security a hypothecation of stock, and the money was paid into the general treasury.

The president of the company and Rowse, one of the plaintiffs, testified that the last loan, which was made March 24, 1866, was needed on the afternoon of that day to pay off laborers, deck hands, &c., in order to enable the company to send out two boats the same evening. Wages due hands or persons employed on board of the vessel comes within the first clause of the section, and it is not shown that the defendant was one of the boats which was to be started out, so as to entitle the claimants to a specific lien if the case otherwise authorized it, but, on the contrary, it plainly appears that the money was loaned generally to enable the vessels to prosecute their voyages.

Haskell, in negotiating the loans for the use of the company, was not an agent to bind the boat within the meaning of the boat and vessel act; but it was competent for the owner to bind the boat, and the act of the agent was the act of the owner. The money was borrowed by the company and paid into its treasury, and used to pay the general running expenses of the boats. There is no evidence to show that it was advanced with the understanding that it should be used specifically for the purchase of supplies, &c., for which the statute gives a lien. This brings the case within the principle of Gibbons et al. v. the same defendant, decided at this term.

The instructions asked for the plaintiffs were erroneous, and the court committed no error in refusing them. The instruction given by the court of its own motion is exceptionable, but, as no injury resulted from it, we order that the judgment be affirmed. Judge Fagg concurs ; Judge Holmes, being related to one of the parties, did not sit.