## Murphey v. Mobile Trade Company.

### Trover for Conversion of Steamboat.

*Maritime contract; jurisdiction of state courts to enforce by admiralty process.* — Where supplies are furnished in the port of Mobile, at the instance of the master, for the use of a steamboat duly enrolled in that port, and plying between Mobile and Columbus, Mississippi, this creates a maritime contract, which cannot be enforced, by admiralty process, in the state courts; and this, whether Mobile was the home port of the vessel or not.

APPEAL from the Circuit Court of Mobile.
Tried before the Hon. J. Q. SMITH.

BOYLES & OVERALL, for appellant.

DARGAN & TAYLOR, *contra*.

B. F. SAFFOLD, J. — The appellant sued the appellee in trover, for the conversion of the steamboat *Mist*, her tackle, apparel, and furniture. Judgment was given for the defendant, under charges and rulings of the court, which were excepted to. The vessel was the property of the plaintiff when it was seized and sold under " Proceedings in Admiralty," instituted in the City Court of Mobile, by virtue of sections 3127–3147 of the Revised Code. The defendant was the purchaser at the sale referred to. The question between the parties is, whether the state law was sufficiently operative to validate the sale as made. This question has been decided in the negative by this court, on an appeal taken directly from the proceedings in admiralty. *Mist* v. *Martin, Cowen & Co.* 41 Ala. 712.

The facts of the former case, and of this one, necessary to be mentioned, are as follows : The vessel was the property of the appellant, Murphey, a resident citizen of Mississippi. It was built in Pennsylvania, and was duly enrolled and licensed in the port of Mobile, and was plying between that place and Columbus, Mississippi. While so employed, Martin, Cowen & Co., grocery merchants, residing and doing business in Mobile, as their libel recites, " sold and furnished to the said steamer *Mist* victuals and supplies, at the instance of the master and his agents." Afterwards they proceeded to coerce payment, by the seizure of the boat in the manner provided by the statute for the enforcement of the lien which it gave. As the

seizure was made within twenty days of the return term of the process, and no stipulation was entered into by the owner, master, or other person, the court, not being authorized to render judgment at the first term, ordered a sale of the boat, her tackle, apparel, and furniture, for cash, to be paid into court and held subject to its order, in precise conformity with the statute. The sale was made as directed, and the defendants in this case became the purchasers. At the next term of the court, the cause was determined in favor of the libellants. That judgment was reversed in this court, on the ground that the City Court had no such jurisdiction as it attempted to exercise.

Notwithstanding the *status* of that case, the Circuit Court held in this case that Mobile was the home port of the vessel, by virtue of her registry, enrolment, and license, and as the supplies were furnished to her there, no maritime lien existed, for the enforcement of which the federal courts have the exclusive jurisdiction. Charges asked by the plaintiff, to the effect that Mobile was not the home port of the vessel, if the owner lived in Mississippi ; and that the sale was void, because of the want of jurisdiction in the City Court to order it, and also of the reversal of the judgment in that case, were refused. The instructions given and refused are assigned as errors.

The Circuit Court erred in confining the exclusive jurisdiction of the Court of Admiralty to cases of maritime lien. The federal Constitution extends the judicial power of the United States to all cases of admiralty and maritime jurisdiction. U. S. Const. Art. III. § 2. And the ninth section of the Judiciary Act of 1789 confers upon the District Courts " exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction : . . . . saving to suitors, in all cases, the right of a common-law remedy, where the common law is competent to give it." The 12th Rule of Admiralty Practice, of May 1st, 1859, provided that " In all suits by material-men, for supplies, or repairs, or other necessaries, for a foreign ship, or for a ship in a foreign port, the libellant may proceed against the ship and freight *in rem*, or against the master or owner alone *in personam*. And the like proceedings *in personam, but not in rem*, shall apply to cases of domestic ships, for supplies, repairs, or other necessaries."

There can be no doubt of the maritime character of the contract, for the enforcement of which the vessel was sold, whether it created a lien or not. It was for proper supplies furnished at the instance of the master, for the use of an enrolled vessel employed in commerce on a river navigable from the sea. Such a contract is within the admiralty jurisdiction of the United States District Court, whether the vessel was foreign or domestic, or whether the supplies were furnished in the home port or

another. The Constitution, and the Judiciary Act above cited, make it so. If it created no maritime lien, the proceeding would have to be *in personam.* On the 6th of May, 1872, the 12th Rule of May 1st, 1859, was amended, so as to read, "In all suits by material-men, for supplies, or repairs, or other necessaries, the libellant may proceed against the ship and freight *in rem,* or against the master or owner alone *in personam.*" This amendment, restricted to cases arising since it took effect, sweeps away, very properly, the embarrassing distinctions which prevailed between foreign and domestic vessels, and the foreign and home ports. Under its operation a case like the present would proceed by libel without difficulty. It and the old 12th Rule of September 1st, 1845, and, as well, the 12th Rule of May 1st, 1859, most clearly manifest the opinion of the Supreme Court of the United States in respect to the extent of the jurisdiction of the United States District Courts in maritime cases, without regard to lien. In fact, while the distinction is more serviceable in argument than practical in business, the liability of the ship and freight for necessaries is not technically a lien. It is an individual responsibility, admitted and established by universal concurrence, from the necessity of the case. On this account, the enforcement of it is committed to the supreme national authority. Under the federal Constitution, the states could not displace a prior contract lien acquired by others in favor of these contracts with the material-men. It would be impairing the obligation of contracts.

In further proof of the admiralty jurisdiction of the federal court over this case, *The General Smith* (4 Wheat. 439) is directly in point. The suit was by libel in the District Court, for stores and supplies furnished at Baltimore, that being the home port of the vessel, and the residence of the owner. It was held that there was no lien by maritime law ; and as none by municipal law was shown, the proceedings were adjudged invalid. The court said, "If this had been a suit *in personam,* there would not have been any hesitation in sustaining the jurisdiction of the District Court."

It has been so emphatically decided by the United States Supreme Court that civil cases of admiralty and maritime jurisdiction cannot be prosecuted in the state courts, by proceedings *in rem,* that it is unnecessary to do more than cite the authorities. *The Belfast,* 7 Wall. 644 ; *Hine* v. *Trevor,* 4 Wall. 555 ; *The Moses Taylor,* 4 Wall. 411 ; *The Eagle,* 8 Wall. 15. See also *Moir* v. *Dusaque,* Mich. U. S. D. C., April Law Times, 1871, p. 84. These cases decide, that original cognizance of maritime contracts is exclusively in the federal District Courts ; that the common-law remedy, saved to suitors, is such a one as attaches to the interest of the owner in the vessel because it is

[Williams's Devisees *v.* Williams's Administrator.]

held as the property of the defendant, and not as the offending or responsible thing; that a state cannot create a maritime lien, nor confer authority on its courts to enforce such a lien by a suit or proceeding *in rem*, as practised in the Admiralty Courts.

There can be no doubt that the admiralty jurisdiction, conferred by the Constitution on the United States courts, extends to all navigable waters, whether salt or fresh, whether tide waters or not, and wherever situated, which are subservient to the purposes of commercial intercourse; and to every vessel or other water craft susceptible of, and actually engaged in, such intercourse; and to every contract for the benefit of such vessel necessary to its use and employment in such intercourse on the waters described. Conkling's Treatise, 4th ed. p. 256.

The "Proceedings in Admiralty," as contained in the Revised Code (§§ 3127–3147), were so evidently intended to set up an admiralty jurisdiction in the courts of law of the State, which is contrary to the Constitution and laws of the United States, that it is scarcely a question whether, under these statutes, a proceeding could be maintained against a vessel in a case not maritime. If such a case could arise, I think the law would be subject to the constitutional objections: 1st, of impairing the obligations of contracts, in superseding liens previously acquired by contract; 2d, of debarring a citizen from defending, by himself or counsel, a civil cause to which he was a party, and of denying to him a remedy by due process of law for injury done him in his lands, goods, &c., in selling his property without notice to him, and without judicial ascertainment of the debt for which it was sold.

The judgment is reversed, and the cause remanded.