WESTON vs. MORSE, impleaded with another.

*Maritime Liens: Jurisdiction of State Courts: Sec. 1, ch. 154 of 1871.*

1. Under the decisions of the supreme court of the United States, state laws may give certain maritime liens on domestic ships in home ports, which however, can be enforced *in rem* only by the federal courts.
2. *It seems* that sec. 1, ch. 154 of 1871, gives a maritime lien, independent of the proceeding and jurisdiction in the state court contemplated by the subsequent sections.
3. But the remedy provided by said act, for liabilities incurred by the master, owner, agent or consignee of a vessel, by attachment against the person incurring the liability *and the vessel by name*, and judgment and execution against the vessel by name, whether the owner be a party or not, is, so far as it relates to the vessel, a proceeding *in rem;* and, the jurisdiction of such a proceeding being essentially one in admiralty, the statute cannot confer it on the state courts.

APPEAL from the Circuit Court for *Winnebago* County.

On the 18th of March, 1874, the defendant *Morse* and one Wilson sold a steamboat, "The Diamond," to the defendant McCall, taking as security for part of the purchase money, a chattel mortgage for $5,093, which was duly filed with the town clerk of Omro in this state, the residence of McCall. The vessel was delivered to McCall, and was used exclusively in navigating the Fox and Wolf rivers, between Oshkosh, Winneconne and Berlin in this state. It was conceded that the vessel is of more than twenty tons burden; that it was never registered or enrolled, but was licensed about April 25, 1875, under the laws of congress, to run upon said waters; that the demands sued for in this action all accrued while McCall was in possession of the boat; and that no relation of principal or agent existed between him and *Morse*. After the boat began to run, McCall removed to Oshkosh, of which place he remained a resident till some time in November, 1874. About November 25, 1874, default having been made in the payment of the mortgage, the steamer was sold, and bid

in by *Morse* to satisfy the mortgage. The claims of the plaintiff on the property consisted of demands for sailors' wages and for supplies furnished the vessel at Oshkosh, and other places along the rivers. *Morse* was made a defendant herein on his own application, under ch. 154, Laws of 1871, the act under which the action was brought. The court held that the demands of the plaintiff were a lien upon the vessel, superior to that of the chattel mortgage, and adjudged that the vessel be sold to satisfy the plaintiff's claim. A personal judgment was also rendered against McCall. *Morse* appealed from the judgment.

The brief for the appellant was signed by *Finch & Barber*, and that for the respondent by *Jackson & Halsey*. The cause was argued orally by *Charles Barber* and *H. B. Jackson*.

For the appellant, it was argued as follows:

1. The court had no jurisdiction over the subject matter of the action, the contracts being maritime. The proceedings to enforce the lien have all the traits of a suit *in rem* in the United States district courts, which courts have exclusive jurisdiction. *Morse v. Ins. Co.*, 30 Wis., 506; Dunlap's Adm. Pr., 43; Bouv. Dic., "Maritime Contract;" 2 Gall., 398; 1 Kent's Com., 369, note; 2 Am. Law Rev., 455; 5 id., 581; *Ins. Co. v. Dunham*, 11 Wall., 1; *The Lottawanna*, 21 id., 559, 580; *The Montello*, 20 id., 430; *The Kate Tremaine*, 5 Ben., 60; *The W. J. Walsh*, id., 72; *In re Josephine*, 39 N. Y., 22; *Sheppard v. Steele*, 43 id., 56; *The Sarah Jane*, 1 Lowell, 203; Const. U. S., art. III, sec. 2; Stats. U. S., 1789, ch. 20; R. S. of U. S., § 563, subd. 8; id., § 711, subd. 3. The court below had no jurisdiction except to enter a personal judgment against McCall. Nor had the legislature the power to confer upon the state courts jurisdiction to enforce the lien by proceedings *in rem*, as in the admiralty courts. *The Moses Taylor*, 4 Wall., 411; *The Hine v. Trevor*, id., 555; *The Belfast*, 7 id., 624; *The Eagle*, 8 id., 15; *The Lottawan-*

*na, supra; In re Josephine, supra; Brookman v. Hamill,*
43 N. Y., 554; *Vose v. Cockcroft,* 44 id., 415; *Thorsen v. The
J. B. Martin,* 26 Wis., 488; *Campbell v. Sherman,* 35 id.,
103; 24 Iowa, 192. The concurrent jurisdiction of the state
courts is based upon the saving clause of the act of 1845.
7 U. S. Stats. at Large, 726; *Thorsen v. The J. B. Martin,
The Hine v. Trevor,* and *The Eagle, supra.* But the decis-
ion in this last case rendered that law inoperative. It made
the jurisdiction of the United States courts exclusive in cases
arising upon the lakes, as in cases arising on the ocean.
5 Am. Law Rev., 600, 621; 41 Ala., 712; 27 Mich., 479;
*The Steamer Oler,* 14 Am. Law Reg., N. S., 300. Moreover,
that act has been repealed. R. S. of U. S., tit. XIII, ch. 3, §
563, subd. 8, and ch. 12, § 711, subd. 3. The act of 1845 applied
only to "the lakes, and navigable waters connecting said
lakes." The Fox river is an inland river. *The Montello,
supra.* But the true test of jurisdiction is, whether the con-
tract was maritime, and to be performed on navigable waters
to which the general jurisdiction of admiralty extends. *The
Belfast, supra; Dever v. Steamer Hope,* 42 Miss., 715; *S. C.,*
2 Am. Rep., 643. The proceedings in this case have all the
traits of a suit *in rem* in admiralty, and not of a common
law remedy. *The Moses Taylor* and *The Hine v. Trevor,
supra; The Mary,* 9 Cranch, 126; 3 Am. Law Rev., 601, 603;
*Ashbrook v. The Golden Gate,* Newb., 296, 303; *Bogart v.
The John Jay,* 17 How., 399; *Percival v. Hickey,* 18 Johns.,
257, 292; 1 Kent's Com., 378; *Southern Dock Co. v. Steam-
boat J. D. Perry,* 23 La. An., 39 (8 Am. Rep., 585); 7 Am.
Law Rev., 8; 2 Ad. & El., 72. 2. Even if the state court had
jurisdiction, the liens of the plaintiff were not superior to
the claim of *Morse* under the chattel mortgage. Ch. 154 of
1871 does not provide that the lien of suitors shall *take pre-
cedence* of other claims, differing in that respect from similar
statutes in other states. 4 Wall., 412; 39 N. Y., 21; The
Log Lien Act, Tay. Stats., 1768, § 25. This remedy being

strictly statutory, must be strictly construed. *Souter v. The Sea Witch*, 1 Cal., 164; 2 Cow., 419, 420; 15 Mass., 205, 206; *Miller Bros. v. The Kate Hinchman*, 8 Chicago Legal News, 388; *The Grace Greenwood*, 2 Biss., 134; *The Sky Lark*, id., 251; *Barque " Great West " v. Oberndorf*, 57 Ill., 168; *Propeller Hilton v. Miller*, 62 id., 231; *Scott's Case*, 1 Abb. (U. S.), 336; *The Scio*, L. R., 1 Adm. & Ecc., 353. A mortgagee not in possession of a boat is not liable for repairs. 8 Johns., 159; 7 Barb., 438; 6 Duer, 358; 20 Wis., 152. 3. When the mortgage was executed, " The Diamond " was not registered or enrolled, and the mortgage stands on the same footing as one filed in the custom house on a vessel registered and enrolled. 9 Stats. at Large, p. 450; R. S. of U. S., § 4192; *Perkins v. Emmerson*, 59 Me., 319; *Foster v. Perkins*, 42 id., 168; *Stinson v. Minor*, 34 Ind., 89; *Best v. Staple*, 61 N. Y., 71. 4. Ch. 154 of 1871 is void for uncertainty, because it does not specify the circuit court with whose clerk the petition must be filed.

For the respondent, it was argued as follows :

1. Chapter 154 of 1871 is valid and creates a lien for supplies furnished as in this case, which may be enforced by an action in the state court by attachment and sale of the boat. The mortgagees were the substantial owners of the boat. The chattel mortgage was a *legal conveyance* of the boat, subject to be defeated only by a payment that was never made. *Byron v. May*, 2 Chand., 103, 107; *Flanders v. Thomas*, 12 Wis., 410, 411. It is conceded that by the chattel mortgage *Morse* had a standing in court for the purpose of contesting the right of the plaintiff to enforce a lien on the boat. But even the absolute owners cannot litigate any other question. *Munger v. Lenroot*, 32 Wis., 541; *Winslow v. Urquhart*, 39 id., 260, 267. It is not denied that the contracts for supplies were made in a "home port," or that the boat was navigating within this state; and such contracts have never been held, even by the federal court, to be maritime contracts. *Leon v. Gal-*

*ceran*, 11 Wall., 185, 192; *The Belfast*, 7 id., 624, 645; *The General Smith*, 4 Wheat., 438. Even if the contracts set forth in the complaint were maritime, yet it is always competent for parties seeking redress under maritime contracts to disregard their right in the admiralty courts, and apply to the common-law courts, provided they pursue common-law remedies. *The Hine v. Trevor, supra; The Belfast, supra; Mailler v. Ex. Pro. Line*, 61 N. Y., 312. All that is prohibited to the state courts by the statute (sec. 9, Judiciary Act of 1789), is a proceeding of that nature where the boat itself is made defendant. *The Moses Taylor*, 4 Wall., 427. Common-law remedies to enforce liens on boats created by state laws, such as are provided by chapter 154 of 1871, and also common-law actions even on maritime contracts, are expressly justified by the supreme court of the United States. *Steamer St. Lawrence*, 1 Black, 531; 11 Wall., 185. The remedy provided by ch. 154 of 1871 is a common-law remedy, in the same sense as the proceeding to enforce liens on logs by ch. 254 of 1862; and this act has already been held valid by this court, in *Munger v. Lenroot* and *Winslow v. Urquhart, supra*. See Drake on Attachments, § 5, and cases cited. The act of 1871 may be valid in its application to some cases within the scope of its provisions, although void in relation to particular cases differing from the one at bar. *Golden v. Prince*, 3 Wash. C. C., 318; *Commonwealth v. Hitchings*, 5 Gray, 482.

RYAN, C. J. It is too late, while the supreme court of the United States abides by its present rule of decision, to question the authority of state law to give certain maritime liens on domestic ships in home ports. It is also too late to doubt the exclusive jurisdiction of federal courts to enforce such liens *in rem*. *The Moses Taylor*, 4 Wall., 411; *The Belfast*, 7 id., 624; *The Eagle*, 8 id., 15; *The Lottawanna*, 21 id., 558. How the exclusive jurisdiction of the federal courts to administer, is reconcilable with the authority of state law to

create maritime liens, is a question with which state courts have no concern, and which seems to trouble the federal courts not a little. It is enough for us that their jurisdiction over the subject is exclusive.

There is, perhaps, no doubt that sec. 1 of ch. 154 of 1871 gives a maritime lien, independent of the proceeding which the subsequent sections authorize, and of the jurisdiction to entertain it which those sections undertake to confer. But the question for us to determine is, whether the proceeding is a suit *in rem*, and the jurisdiction in the nature of admiralty jurisdiction. If such be the character of the proceeding and jurisdiction, the statute of 1871 is open to the same objection as ch. 184 of 1869, and is inoperative to confer jurisdiction on the courts of the state. *Campbell v. Sherman*, 35 Wis., 103.

If the statute before us had authorized a proceeding by attachment against the owner of a vessel and the vessel by name, for the debt of the owner, of whatever nature, we should have probably been disposed to hold it in the nature of a common-law remedy, within the jurisdiction of the courts of the state. But that is not the proceeding which the statute authorizes. It applies to liabilities incurred by the master, owner, agent or consignee of a vessel; and authorizes an attachment against the person incurring the liability and the vessel by name, and judgment and execution against the vessel by name, whether the defendant be master, owner, agent or consignee. If the demand sued on is found not to be a lien upon the vessel, still a personal judgment is authorized against the defendant. This appears to be a mixed proceeding, *in personam* against the master, owner, agent or consignee, and *in rem* against the vessel. The liability of the vessel is to be determined against itself, whatever may be the particular relation to it of the personal defendant; so that there may be judgment of sale against it for the lien, in a proceeding to which the owner is not a party. It is not against the interest

Weston vs. Morse, impleaded with another.

of the defendant in the vessel that judgment is to go; but against the vessel itself, whoever may be the owner, and whether or not a party. So far as it relates to the vessel, we take this to be strictly a proceeding *in rem;* none the less so because it is joined with a proceeding *in personam* against the person contracting the debt for it. This appears by the whole object and scope of the statute, which is to create and enforce maritime liens on vessels for debts due upon maritime contracts. Such a proceeding must necessarily be *in rem;* and the jurisdiction to entertain it is essentially a jurisdiction in admiralty.

It is true that the statute provides that the owner or other person having interest in the vessel, not made a defendant, shall, upon his application, be admitted to defend. This is probably the general rule in courts of admiralty; and the mere right of the owner to make himself a party does not vary the character of the proceeding *in rem* which may be taken without making him a party; which may proceed upon a lien on his vessel, to which he may be personally a stranger.

The proceeding authorized by the statute appears to us to be very plainly within the rule of the supreme court of the United States in *The Moses Taylor, supra,* and *The Hine v. Trevor,* 4 Wall., 555. And in submission to those and similar cases in that court, and following *Campbell v. Sherman, supra,* in this court, we feel compelled to hold that the statute in question can confer no jurisdiction on the the courts of the state, to entertain the proceeding which it authorizes.

*By the Court.* — The judgment of the court below is reversed as against the appellant, and the cause remanded with directions to the court below to dismiss the action as against the appellant.