## WILLIAM L. HAYFORD

*vs.*

## OSCAR P. CUNNINGHAM, Administrator of the estate of FREDERICK J. PARKER, deceased, and Schooner LADY OF THE OCEAN

| | |
|---|---|
| John Holyoke *et al.* | *vs.* Same. |
| Francis G. Genn | *vs.* Same. |
| Arthur D. Snowman | *vs.* Same. |
| David Brown | *vs.* Same. |
| Nahum T. Hill | *vs.* Same. |
| William H. Genn *et al.* | *vs.* Same. |
| Oliver P. Dorr | *vs.* Same. |
| Austin Saunders | *vs.* Same. |
| Sewall B. Swazey *et al.* | *vs.* Same. |
| Thomas Trim | *vs.* Same. |
| William W. Parker | *vs.* Same. |
| Frederick Spofford | *vs.* Same. |
| George T. Allamby *et al.* | *vs.* Same. |
| Alonzo Colby *et als.* | *vs.* Same. |

Hancock.　Opinion March 7, 1881.

*R. S., c. 91, § 7.　Liens on vessels for repairs, how and when enforced.. Jurisdiction of federal courts.*

To enforce the statutory lien for work and materials furnished in repairing vessels, does not require an attachment to be laid upon the vessel within four days after the plaintiff's work is done or his materials are furnished; it must be within four days after the whole work of repairing is completed; the repairs to be considered as completed when the work upon the vessel has been discontinued and has wholly ceased, although additional repairs might be necessary to fit the vessel for sea.

For repairs put upon a foreign vessel, (a vessel out of the State or country where owned), the remedy in admiralty ever since the creation of the federal courts, has belonged exclusively in such courts; and the later rules and opinions of the Supreme Court of the United States (although formerly otherwise) have established the policy of requiring that admiralty remedies for repairs upon domestic vessels shall belong exclusively to the same tribunals.

ON REPORT.

The opinion states the case.

*H. D. Hadlock*, for the plaintiffs, upon the questions discussed in the opinion, cited: R. S., c. 91, § 7; *The Kearsarge,*

1 Ware, 552; *Hull of a new ship,* 2 Ware, 207; *The Calistro,* 2 Ware, 45; *Wooly* v. *The Peruvian,* 3 Ware 156; *Barque Clauser,* 2 Story, 445; *Purrington* v. *Hull of a new ship,* 1 Ware, 561; *The Young Mechanic,* 3 Ware, 58; *The Young Mechanic,* 2 Curt. 404; *Platina,* 3 Ware, 180.

*L. A. Emery,* for the owners of the schooner Lady of the Ocean, upon the questions discussed in the opinion, cited: *Bicknell* v. *Trickey,* 34 Maine, 273; *Scudder* v. *Balkam,* 40 Maine, 291; *Lynch* v. *Cronan,* 6 Gray, 531; *Frost* v. *Ilsley,* 54 Maine, 351; *Fuller* v. *Nickerson,* 69 Maine, 241; *Calkin* v. *U. S.* 3 Ct. of Claims, 297; *Johnson* v. *Pike,* 35 Maine, 291; *U. S. Constitution,* Art. III, § 2; Judiciary Act, 1789, c. 20, § 9; *Hine* v. *Trevor,* 4 Wall. 555; *The Belfast,* 7 Wall. 624; *The General Smith,* 4 Wheat. 438; *The Lottawanna,* 20 Wall. 219; *Str. St. Lawrence,* 1 Black, 522; *Str. Petril* v. *Dumont,* 28 Ohio, 602; *Crawford* v. *Caroline,* 42 Cal. 469; *Southern Dry Dock Co.* v. *Perry,* 23 La. Ann. 39; *The Moses Taylor,* 4 Wall. 411; *Weston* v. *Morse,* 40 Wis. 455; 2 Pars. Mar. Law, 508, 640; 1 Whar. Ev. 339, Admiralty, Rule 12, 21 Wall. 560; *The Starlight,* 103 Mass. 227; *The Richard Busteed,* 100 Mass. 409; *The Bee,* 1 Ware Rep. 332.

PETERS, J.   These are *in rem* suits for labor and materials expended in repairing the schooner Lady of the Ocean. While the vessel was undergoing repairs, the owner failed, the work was discontinued, the owner soon afterwards died, and the vessel was laid up for more than a year, after the work was ended, before the suits were instituted. In the meantime the vessel was sold by the administrator of the owner to other parties. The statute gives a lien to workmen and material-men in repairing a vessel, to be enforced by attachment within four days after "the work has been completed."

The owners contend that, to preserve the lien, the attachment must be within four days after the plaintiff's work is done, or after the plaintiff's materials are furnished. We think that is not the meaning of the statute. "The work" does not mean the

plaintiff's share of the work, and cannot refer to materials furnished by him; but means all the work, the job of work, to be completed. This interpretation is the one most beneficial to all interests. It affords a definite period within which all lien attachments may be laid upon the vessel, and requiring none to be made at times that may interrupt the work before it is completed.

The lien upon vessels for labor and materials in repairing them was first given in the Revised Statutes of 1841. It was to continue for four days "after the repairs have been completed." The statute now reads, "after the work has been completed." The reason for the change of phraseology is evidently this: In the present statute the four days period for attachment extends to labor and materials in finishing a new vessel after launching, as well as in repairing old vessels. The word "repairs" would be inappropriate to finishing a new vessel that had been launched, but the word "work" may well apply to either finishing or repairing vessels.

Still, we cannot agree with the plaintiffs in the position taken by them, that the work on this vessel was not done because all necessary repairs were not completed. Other repairs might be necessary to fully complete and equip the vessel; but the work towards which the plaintiffs contributed was completed when work upon the vessel was discontinued. It matters not what may have been the cause of its suspension or termination. That work was done, it wholly ceased. There would be too much uncertainty in the other construction. Instead of four days, the duration of the lien might be limited only by the life of the vessel. She might "fly upon the wings of the wind," and "dwell in the uttermost parts of the sea," and the encumbrance clings to her. No subsequent purchaser could ever surely know that his title was clear. *Sheridan* v. *Ireland*, 66 Maine, 65, is a case that, upon this point, strongly resembles, and supports our conclusion in, the case at bar.

It may be profitable to notice another point taken by the defendants, although presenting a question which we are not necessarily called upon to determine, in view of our decision of the

question already disposed of. The defendants (owners of vessel) contend that the question before us is not a matter within State jurisdiction, but is of a maritime nature, cognizable exclusively in the admiralty courts of the United States. These are cases of repairs put upon a vessel at her home port, that is, in a port within the State where the vessel was owned. She was therefore a domestic and in no sense a foreign vessel. For repairs upon a foreign vesssel, that is, a vessel out of the State or country where owned, there is no doubt, and never was any, that the remedy, if sought for in admiralty, belongs exclusively in the courts of the United States. Still, our statute is a general one in its terms, conferring State jurisdiction in all cases of repairs. Whether jurisdiction to enforce *in rem* a statutory lien for repairs upon a domestic vessel belongs to the State and United States courts concurrently, or to the one court in exclusion of the other, are questions that have passed through rather a remarkable alternation of opinion in the decisions of the Supreme Court of the United States.

The reason of the federal courts taking exclusive admiralty jurisdiction in the case of foreign repairs, and at times disclaiming it in the case of domestic repairs, is, that in the former case there is a purely maritime lien, and in the latter case the only lien existing must be local or statutory merely. The general maritime lien does not extend to domestic repairs (or supplies), for the reason that a presumption exists in such cases that the credit is given to the owners and not to the vessel. But where, in the case of domestic repairs, a local lien is given by any custom of the port, or one is created by statute, then the presumption arises that the credit is given to the vessel instead of to the owners. In such case, the lien, although not purely maritime, being of a maritime nature and pertaining to maritime affairs, the admiralty courts take cognizance of it. In the case of a domestic vessel, if the statute imposes a lien for repairs or supplies, the national courts execute it. *The General Smith,* 4 Wheat. 438.

For a long time the State and United States courts exercised jurisdiction concurrently, in suits or proceedings to enforce *in*

*rem* such liens as were created by the statutes of the different States. The practice allowed the federal courts to appropriate admiralty jurisdiction for the enforcement of liens arising in the building and construction of new vessels, as well as in repairing them or supplying them after built. Workmen and material-men, having a lien under the provisions of a State law, had their election to enforce it, either in a district court or a State court, and having made their election, the defendant had to follow them into the court chosen, and submit to the mode of proceeding and trial in that court. The maxim *Qui prior est tempore potior est jure* prevailed.

It began to be questioned, however, whether contracts pertaining merely to the construction of a vessel were in any sense maritime contracts, and the case of *The People's Ferry Co.* v. *Beers*, 20 How. 393 put an end to the practice of allowing admiralty jurisdiction in the federal courts to enforce statutory liens arising in the original construction of vessels. And now all contracts pertaining to the construction of vessels and finishing or furnishing them, either before or after launching, so as to put them in readiness to go to sea, are considered as land and not sea contracts, with which the federal admiralty courts have nothing to do. *Roach* v. *Chapman* (The Capitol), 22 How. 129.

The efforts of the federal courts to get rid of jurisdiction to enforce State statutory liens did not rest there. They became perplexed with the difficulties which were encountered in enforcing in admiralty many of the provisions and conditions upon which the liens were based. Rule twelve in admiralty, changed in 1858, to take effect May 1, 1859, forbade all proceedings *in rem* for repairs put upon domestic ships, whether the local law gave a lien or not; leaving the *in rem* remedy to be enforced in the courts of the States. Mr. Justice NELSON, in *Maguire* v. *Card*, (The Goliah) 21 Howard, 248, immediately after the publication of the new rule, said, "We have determined to leave all those liens, depending upon State laws, and not arising out of the maritime contract, to be enforced by the State tribunals." The same disinclination to derive judicial competency or jurisdiction in admiralty from

State grant was manifested by some of the federal judges in the lower courts. *Merritt* v. *Sackett*, 12 Law Rep. (Boston 1849) 511; *The Schooner Coernine*, 21 *Idem*, (1858) 343. This condition of things continued until 1872, when rule twelve in admiralty was again amended. See 1 Black, 530.

After diverse experiences and many agitations of the subject, the highest judicial tribunal in the land seemed to resolve upon a different policy, and established in 1872 a new rule in the following words : "In all suits by material men for supplies or repairs, or other necessaries, the libellant may proceed against the ship and freight *in rem*, or against the master or owner *in personam*." In 1872 the doors of the district courts, which had been since 1859 shut against suits like those now before us, were opened to them again. Since this date the opinion and feeling among the judges of the federal courts seem to be that their jurisdiction must be exclusive. The tendency of judicial opinion seems to be that the jurisdiction of the State court shall terminate where the national jurisdiction begins, and that there shall not be concurrent jurisdiction in any questions of admiralty to be settled by process and proceedings *in rem*. It has been most emphatically asserted by the Supreme Court that a State cannot grant admiralty jurisdiction to its own courts in any matter that comes within the jurisdiction of the district courts of the United States. *The Moses Taylor*, 4 Wall. 411 ; *The Hine* v. *Trevor, Id.* 555 ; *The Belfast*, 7 Wall. 624 ; *The Lottawana*, 21 Wall. 558. The language of the latter case is direct and most significant. Mr. Justice BRADLEY there says : "State laws cannot confer admiralty jurisdiction upon the State courts so as to enable them to proceed *in rem* for the enforcement of liens created by such State laws, for it is exclusively conferred upon the district courts of the United States." It is not in those cases denied that State courts may enforce such liens by common law remedies, or such remedies as are equivalent thereto. But it is not a remedy in the common law courts which is saved, but a common law remedy ; not such as a legislature may confer upon a common law court, but such as the common law itself (in 1789) was competent to give. It is clear enough that the processes in the cases before-

us are admiralty processes and such as the common law was not competent to give. The suits are not against the defendant's interest in the vessel, but against the vessel itself. It matters not that a jury is allowable to try the cases. All the authorities agree in that.

It will be noticed that the exact question now presented to us has not been determined by any direct adjudication of the Supreme Court of the United States. The necessary facts have not been before them. But they have distinctly announced their rule or policy of decision, and from all the indications we may feel assured that, if opportunity offers, a more decisive declaration upon the subject will come. The doctrine of exclusive jurisdiction in the national courts has been strongly affirmed in the case of *Terrill* v. *Schooner B. F. Woolsey*, decided in U. S. C. C. (S. D. New York) in October, 1880, reported in The Reporter, vol. 10, p. 619. With the same view, several of the State courts have declined jurisdiction in cases like the present, although, before the late declarations of the Supreme Court, they had exercised such jurisdiction. The binding authority of the Supreme Court upon this question would not be denied by the State courts. *Edwards* v. *Elliott*, 21 Wall. 532; *In re Edith*, 11 Blatch. 451; *The Circassian, Idem*, 472; *Robert Fulton*, 1 Paine, (C. C.) 620; *Dever* v. *The Hope*, 42 Miss. 715; *Southern Dry Dock Co.* v. *The Perry*, 23 La. An. 30; *Jackson* v. *Propeller Kinnie*, 8 Am. Law. Reg. (N. S.) 470; *Murphy* v. *Mobile Co.* 49 Ala. 436; *Crawford* v. *Bark Caroline Reed*, 42 Cal. 471; *Cavender* v. *Fanny Barker*, 40 Mo. 235; *Wyatt* v. *Stackley*, 29 Ired. 279; *Campbell* v. *Sherman*, 35 Wis. 103; *Weston* v. *Morse*, 40 Wis. 455; *Steamboat General Buell* v. *Long*, 18 Ohio St. 521; *Foster* v. *Busteed*, 100 Mass. 409; *The Josephine*, 39 N. Y. 19; *Sheppard* v. *Steele*, 43 N. Y. 52; *Brookman* v. *Hamrill, Id.* 554; *Happy* v. *Mosher*, 48 *Id.* 313; *King* v. *Greenway*, 71 N. Y. 417; *Wilson* v. *Lawrence*, 82 N. Y. 409. Several learned and instructive articles in the Law Reviews cast light upon the question. 5 Amer. Law Rev. 581; 7 Am. Law Rev. 1; 9 Am. Law Rev. 638.; 14 Am. Law Reg. N. S. 593. The foregoing authorities

indicate the present condition of judicial sentiment and opinion upon the question. We do not authoritatively determine the question for ourselves, inasmuch as we place the decision of the present cases upon grounds superseding the necessity. The great practical importance of the question leads us to discuss it as we have.

*Entry in each case to be: Judgment against the vessel denied; one bill of costs to the owners of vessel, to be apportioned against the plaintiffs in all the cases submitted.*

APPLETON, C. J., WALTON, DANFORTH, VIRGIN, and LIBBEY, JJ., concurred.