Abraham R. Hunter, Appellant, v. St. Louis & Mississippi Valley Transportation Company, Respondent.

St. Louis Court of Appeals, May 3, 1887.

1. Jurisdiction of State Courts—Admiralty.—Statutes which authorize proceedings *in rem* against vessels cognizable in admiralty are unconstitutional, but, in order to deprive a state court of jurisdiction over the subject, the controversy must be concerning a maritime, or admiralty, lien, and be a proceeding *in rem* seeking its enforcement.

2. Salvage.—Vessels must be lost or wrecked in a perishable condi-. tion to be the subject of salvage under section 6992, of the Revised Statutes.

3. ———— A strongly-built barge, broken loose from her moorings by an ice gorge, and floating down the river, pursued by her owners, is not lost, although not in sight of her owners, when her progress is arrested by the alleged salvors.

4. ———— Such a vessel, so situated, shown to be free from water; wholly uninjured, and safer while floating than when moored to

the bank by the alleged salvors, and exposed to the pressure of the floating ice, is not in a perishable condition.

5. INSTRUCTIONS—APPELLATE PRACTICE.—The giving of an erroneous instruction is not ground for the reversal of a judgment which is a correct conclusion of law upon uncontroverted facts.

APPEAL from the St. Louis Circuit Court, LEROY B. VALLIANT, Judge.

*Affirmed.*

A. R. TAYLOR, for the appellant: The barge was lost, within the meaning of the statute. Rev. Stat., sect. 6992; *Collard v. Eddy*, 17 Mo. 356. And was in a perishable condition. Cohen's Admiralty Law, 39; *The Saragossa*, 1 Benedict 551; *Holmes v. The Sloop*, 1 Benedict, 81.

GIVEN CAMPBELL, for the respondent: The case presented by the petition is for alleged salvage services. Such claim is of ancient admiralty jurisdiction, and, as this claim is wholly founded upon an unconstitutional statute, this court has no authority to enforce it. *The Moses Taylor*, 4 Wall. 411; *The Hine v. Trevor*, 4 Wall. 455; *The Belfast*, 7 Wall. 624; *The Lottawanna*, 21 Wall. 558; *Aiken v. Steamer Bismarck*, 4 Mo. App. 569. The vessel was neither lost nor in a perishable condition. Rev. Stat., sect. 6992; *Schooner Emulous*, 1 Sum. 216; Abbott, Shipping, 564; Marvin, W. & S., sect. 99; 2 Pars. Mar. Law, 288, 289; *The Reward*, 1 W. Rob. 177.

ROMBAUER, J., delivered the opinion of the court.

This is an action under the statute relating to salvage. The plaintiff, in company with others, tied to the bank of the Mississippi river, above the town of New Madrid, in this state, a model barge, the property of the defendant, and, after having complied with the provisions of the statute touching oath and publication, he

brings this action *in personam* against the owners, having first acquired, by assignment, the interest of his associates in the venture.

The cause was tried before a jury, who found a verdict for the defendant.

The questions arising on the appeal are : (1) Whether the trial court had jurisdiction of the subject matter. (2) Whether the testimony made out a case of salvage under the statute. (3) Whether the court erred in its instructions to the jury. The respondent claims now, although the point was not made in the court below, that chapter 149, of the Revised Statutes, is in contravention of the constitution of the United States, because it confers upon the courts of this state admiralty and maritime jurisdiction, which, under the constitution of the United States, and section 563, of the United States Revised Statutes, is vested exclusively in national tribunals.

This claim is untenable. State statutes authorizing proceedings *in rem* against vessels, for causes cognizable in admiralty, are unconstitutional. *Cavender v. Steamboat Barker*, 40 Mo. 235 ; *Aiken v. Steamboat Bismarck*, 3 Mo. App. 569. As is said in the leading case of *The Moses Taylor* (4 Wall. 427), "the distinguishing and characteristic feature of such a suit is, that the vessel, or thing proceeded against, is, itself, seized and impleaded as the defendant, and is judged and sentenced accordingly." But, in order to deprive the state court of jurisdiction over the subject, it is essential that the controversy be touching a maritime, or admiralty, lien, and be a proceeding *in rem* seeking its enforcement. *Mitchell v. Steamboat Magnolia*, 45 Mo. 67. The proceeding, under our statute, is neither the one nor the other, and the jurisdiction of our state courts is unquestionable.

The statute provides (sect. 6992) : "When any boat, vessel, raft, or other property shall be lost or wrecked, and in a perishable condition, upon any river, any person

may take up and secure the same, at or near the place where found."

The uncontroverted evidence tended to show the following facts: The barge in controversy was moored, with a number of other barges, the property of the defendant, at Belmont, on the Mississippi river. An ice gorge above the town gave way, and swept the barges from their moorings, and they were floating down the river, surrounded by heavy ice. This happened before midnight of February 11, 1886. The defendant's superintendent, in charge of these barges, advised its agent, at Cairo, whence the company's tugboat, at one o'clock P. M. of the succeeding day, started in pursuit of them. The company's agent also telegraphed to certain persons in New Madrid to look out for the barges. Several of the defendant's barges passed New Madrid, the river going heavily with ice, from bank to bank, on the afternoon of February 13, which was Saturday. Some attempts were made to stop them, without effect. The barge in question was coming down close to shore, about one-half mile above New Madrid, when the plaintiff and one of his associates boarded her, jumping onto the barge from the shore, and, procuring a cable, after some effort, succeeded in securely fastening her to the bank. The defendant's tugboat came along a few hours afterwards, and persons in charge of it demanded the barge, stating that the defendant would undoubtedly pay the plaintiff and his associates for any trouble they had gone to, but the plaintiff refused to surrender the barge, and said he would claim the statutory salvage.

The barge remained in that situation, according to the plaintiff's testimony, until the next day, Sunday, the fourteenth, and according to the testimony of one of his witnesses, until Monday, the fifteenth, when she was moved a short distance below, into a slough of the river, which was free from floating ice, and where she was in a secure position. While lying in the river the plaintiff and his associates had felled some trees above the barge

to make her more secure against damage from floating ice. The barge, when the plaintiff first took possession of her, was in a sound condition, uninjured, free from water, and floating bow foremost down the river. She was strongly built, and empty, and there is no evidence that a barge of her build, when floating in the water, surrounded by ice, is not as safe as when tied to the bank in the current of the river. There was evidence that she had been in the floating ice from the night of February 11 until the afternoon of the thirteenth, without having received any injury, and, also, that she was tied to the bank from the afternoon of the thirteenth till the morning of the fifteenth, without receiving any injury; but the testimony of the defendant's witnesses, most of whom spoke from experience, was uniform, that a barge tied in the current of the river is more subject to injury from floating ice, than if floating with the ice, and their explanation seems to be in accordance with the probable physical results of the given state of facts.

There is no other testimony in regard to the fact, that the barge was in a perishable condition when boarded by the plaintiff, except the statement of himself and his witnesses, that she was in such condition.

We have no hesitation to say that, on this evidence, the plaintiff's claim to salvage, under the statute, must fail, regardless of any errors in the instructions of the court.

In *Collard v. Eddy* (17 Mo. 356), the only case decided by a court of final judicature in this state, involving the construction of our salvage act, Judge Ryland says: "A vessel lost, is one that is totally gone from its owners against their will, so that they know nothing concerning it, either whether still existing, or not. Or one which they do know is to them no longer within their use or control, either by capture by an enemy or pirates, or by a known foundering, or by a sinking, by

a known storm or collision, or by a total destruction by shipwreck." This language is quoted for the purpose of showing that our statute contemplates cases of extreme peril, and no others. In that case, "the boat was in a dangerous situation, the ice thickly pressing around it, and its blacksmith shop broken in by another loose boat," and still the court held the plaintiff was properly non-suited, because the circumstances did not bring the case within the salvage act.

In the present case the barge was floating in the ice, wholly uninjured, after an interval of almost two days, and, as the evidence shows, if not intercepted, would probably have floated, without great danger of injury, to the Gulf of Mexico. A tugboat of the defendant was in its pursuit, and would have reached it within a few hours. The barges that preceded it were all re-captured by the tug in an uninjured condition. The testimony tends to show that, though many barges of this company were carried off by the ice at various times, none have ever been lost.

There was no error in the refusal of the plaintiff's instruction defining the word "lost." The barge may well have been out of the sight or control of the owner, and the owner may have not exactly known its locality; and yet it could not be said, as necessitated by the definition in *Collard v. Eddy*, that it was totally gone from its owners, against their will, so that they knew nothing concerning it, whether still existing or not. But the definition which the court gave was no less a departure in another direction from that furnished by the supreme court.

The evidence establishes, beyond question, that the barge, when taken up by the plaintiff, was neither lost, nor in a perishable condition, within the meaning of the statute. (1) She was not "lost." The owner *knew* that she was "still existing," and floating with the river ice, quite as well as the stay-at-home owner of a St. Louis steamer knows that his property is somewhere down the

river on her trip to New Orleans. The testimony shows that the owner had this knowledge, and was dispatching a tug boat to bring her back, three or four hours before the plaintiff took her into possession. Nor was the barge so floating with the ice, against her owner's will. It was in proof that she was purposely moored at Belmont in an insecure manner, so that she would be broken loose by an escaping gorge, and would float with it, instead of remaining fast to offer a resistance which might cause her destruction. (2) The barge was not in a "perishable condition." The witnesses who said that she was liable to be crushed by the ice, while floating, admitted that they had had no river experience, or practical knowledge, on the subject, and their opinions should not have been considered in evidence. All the experts testified directly to the contrary. They said that the barge was stronger than a steamboat—"ten times," one of them said—that no such a barge had ever been destroyed, or injured, while floating with the ice, and that it was a constant practice to provide for such floating of barges in the event of a loosening gorge. In short, this barge was in a safer condition while floating with the ice, and when the defendant owner knew where she was, and what she was doing, and was taking the proper steps to bring her safely home, than she was after the plaintiff had seized and moored her. His act may have been intended from the best of motives, but that, of itself, does not entitle him to a claim of salvage.

Counsel on both sides have referred to decisions of admiralty courts, the one to show that this was a proper case for salvage, and the other that it was not. Those decisions can have but little bearing upon the construction of our statute. Admiralty deals with these questions on equity principles, taking into consideration the danger of the property and its value, and the dangers, risks, and expenses incurred by the salvor. It awards him, accordingly, amounts varying from bare compensa-

tion for his time and trouble to a sum equal, in amount, to a great percentage of the property saved.

But our statute is not flexible. It gives to the salvor one-fifth of the value of the property saved in all cases, and we are free to say that no admiralty court, even conceding that this was a proper case for salvage in admiralty, would have awarded the plaintiff, as a compensation for the services performed by him in this case, more than one-tenth of what he claimed under the statute.

The judgment of the court, being for the right party, is, with the concurrence of all the judges, affirmed.